DOBBELAERE et al., Appellants,

v.

COSCO, INC. et al., Appellees.

[Cite as *Dobbelaere v. Cosco, Inc.* (1997), 120 Ohio App.3d 232.]

Court of Appeals of Ohio,
Third District, Paulding County.

No. 11–97–11.

Decided Dec. 31, 1997.

*Cubbon & Associates Co., L.P.A., Frank W. Cubbon, Jr.,* and *Kyle Alison Cubbon,* for appellants.

*Wegman, Hessler, Vanderburg & O'Toole, David W. Herrington* and *Erin M. O'Toole,* for appellees MTD Products and Aircap Industries Corporation.

*Reminger & Reminger Co., L.P.A., Frank Leonetti III* and *Brian D. Sullivan,* for appellee Tractor Supply Co.

*Crabbe, Brown, Jones, Potts & Schmidt, John C. Albert* and *Charles E. Brown,* for appellees Cosco, Inc., Dorel U.S.A., Inc., and Kidde Industries, Inc.

---

HADLEY, Judge.

Plaintiffs/appellants, Sandra and Michael Dobbelaere (hereinafter known collectively as "Dobbelaere"), appeal the judgment of the Paulding County Common Pleas Court granting the motions for summary judgment of defendants, Cosco, Inc., Dorel U.S.A., Inc., Kidde Industries, Inc. ("Kidde"), Tractor Supply Co. ("TSC"), MTD Products, Inc. ("MTD"), and Aircap Industries Corp. ("AIC").

On August 5, 1992, Sandra Dobbelaere was injured while cutting grass. The head of a brush cutter flew off its shaft, striking her left ankle. The only decipherable manufacturer's label affixed to the brush cutter at the time of the incident read:

"Model TA 1200

"Brush Cutter and Trimmer—Edger

"K&S Industries, Inc. Ft. Worth, Texas 76131"

At the time Dobbelaere was injured, K&S Industries ("K&S") was a dissolved Delaware corporation. Because of the frequent sale of assets between corporations dealing with the K&S product line, we will attempt to introduce the corporate parties in this litigation in a chronological order.

In 1978, K&S incorporated as a wholly owned subsidiary of Kidde. In February 1983, Kidde sold the K&S product line to Cosco. On August 15, 1984, Cosco made a report to the Consumer Products Safety Commission addressing a characteristic defect in the Model TA 1200 brush cutter. As a result of that report, certain parts (*i.e.*, blade holder, shaft attachment, and the plastic head) underwent a design change. Dobbelaere's injuries are unrelated to the defect appearing in the report to the Consumer Products Safety Commission.[1]

---

**1.** In the affidavit of Robert C. Craig, a retired employee of Cosco, he stated that the brush cutter that allegedly injured Dobbelaere was not of the same type as the brush cutter reported to the Consumer Products Safety Commission. Cosco's, Dorel, U.S.A., Inc.'s, and Kidde's joint motion for summary judgment filed June 30, 1995, states that "it is an undisputed fact that the Model TA Brush Cutter involved in this case was not one reported to the Consumer Products Safety Commission on August 15, 1984."

Dobbelaere's memorandum in opposition to the foregoing joint motion for summary judgment and motion to dismiss filed August 23, 1995 states that "[t]he brush cutter was manufactured after August 15, 1984."

In January 1985, Cosco sold the K&S product line to Aircap Industries, Inc. ("Aircap"). In the purchase agreement between Cosco and Aircap, Aircap agreed to assume all liabilities of the K&S product line except liabilities arising out of the defect reported to the Consumer Products Safety Commission.[2] Aircap held the K&S product line until June 3, 1986. On that date, Aircap sold its assets, including the K&S product line to AIC and MTD (where referred to collectively, AIC and MTD will be known as the "MTD defendants"). The MTD defendants agreed to assume the liabilities of Aircap.[3] These liabilities included the liability Aircap assumed regarding the K&S brush cutter.

---

**2.** Article 3 of the Agreement of Purchase of Sale of Assets between Cosco and Aircap states as follows:

"3.1 Assumption of Liabilities. On the terms and subject to the conditions hereon, buyer [Aircap] will assume on the closing date the following liabilities and obligations of seller [Cosco] relating directly to the business * * *, but excluding those liabilities and obligations described on exhibit 3.1 hereto * * *, and agrees to perform the assumed liabilities and to defend, indemnify and hold harmless seller from and against any and all loss, cost, damage or expense arising out of the assumed liabilities. The assumed liabilities shall be:
" * * *

"(c) All liabilities and obligations of seller for death, personal injury, other injury to persons, property damage or losses or deprivations of rights, including, without limitation, any such liabilities or obligations for failure to warn, resulting from, caused by or rising out of, directly or indirectly, use of or exposure to any of the products of the business * * * where death, injury, damages or a loss occurs after the closing date; provided, however, that buyer shall not assume any liabilities for death, injury, damages or loss relating to the characteristics of the Model TA 1200 Brush Cutter reported to the Consumer Products Safety Commission on August 15, 1984. Seller shall continue to be responsible for liabilities and obligations described in the Section 3.1(c) if, and to the extent that, the event alleged to be the basis for such liability or obligation occurred on or before the closing date and seller shall be responsible for liabilities and obligations described in this Section 3.1(c) relating to the characteristics of the Model TA 1200 Brush Cutter reported to the Consumer Products Safety Commission on August 15, 1994, no matter when the event alleged to be the basis for such liabilities and obligations occurs."

**3.** Article 3.1 of the Agreement of Purchase and Sale of Assets between Aircap and the MTD defendants states as follows:

"3.1 *Assumption of Liabilities.* On the terms and subject to the conditions hereof, Buyer [the MTD defendants] will assume on the Escrow Closing Date the following liabilities and obligations of Seller [Aircap] relating to the Business * * *, and agrees to defend, indemnify and hold harmless Seller from and against any and all loss, cost, damage, or expense arising directly or indirectly out of the Assumed Liabilities:
" * * *

"(c) all liabilities and obligations of Seller for death, personal injury, other injury to persons, property damage or losses or deprivations of rights, including, without limitation, any such liabilities or obligations for failure to warn, resulting from, caused by or arising out of, directly or indirectly, use of or exposure to any of the products of the Business (or any element thereof) where death, injury, damages or a loss occurs; provided, however, that Seller shall indemnify Buyer pursuant to and to the extent set forth in Section 8.1 hereof for liabilities and obligations described in this Section 3.1(c) if, and to the extent that, the occurrence alleged to be the basis for such liability or obligation occurred on or before the Escrow Closing Date and was not otherwise disclosed to Buyer pursuant to the terms of this Agreement."

On August 12, 1986, two months after the MTD defendants purchased the K&S product line, Dobbelaere's father purchased the brush cutter that is the subject of this litigation from TSC in Defiance, Ohio. The accident occurred six years later on August 5, 1992.

The record shows that the brush cutter that injured Dobbelaere was manufactured by either Cosco after August 15, 1984 or Aircap before it sold its assets to the MTD defendants on June 3, 1986.[4]

Dobbelaere filed suit against Cosco, Dorel, U.S.A., Inc., Kidde (where referred to collectively, Cosco, Dorel, and Kidde will be known as the "Cosco defendants"), K&S, TSC, and John Does One and Two in July 1994.[5] The complaint sounded in actions for negligence, strict liability and breach of warranty. Essentially, Dobbelaere alleged that either the Cosco defendants, K&S, or a John Doe manufactured the product that caused the injury. The claim against TSC was one of seller's liability pursuant to R.C. 2307.78(B).

In February 1995, TSC filed a third-party complaint naming Aircap and the MTD defendants as third-party defendants, and sought joint and several indemnity and contribution from the third-party defendants. TSC also filed a cross-claim against the Cosco defendants, Hanson Industries, Hanson Corporation, and K&S for joint and several indemnity and contribution from these parties.[6]

After limited discovery and the filing of various defendants' motions for summary judgment, Dobbelaere filed an amended complaint. Dobbelaere named Aircap as John Doe One and AIC as John Doe Two. MTD was added as a party-defendant. Aircap never answered the amended complaint or otherwise appeared in this action. Service of process was made on the secretary of state of Delaware, the state of Aircap's incorporation, but the record does not reveal whether that office served Aircap.

---

**4.** We will assume the following facts are true, construing the evidence in a light most favorable to Dobbelaere. In the affidavit of Robert Craig he established the first possible date of manufacture was after August 15, 1984. He established this date based upon the type of parts utilized on the brush cutter after the report to the Consumer Products Safety Commission. The ending date for manufacture was provided in the affidavit of Mark Holland, the manager of standards compliance and testing for MTD. He stated that based upon his review of the evidence, the brush cutter was not manufactured by the MTD defendants. Therefore, the brush cutter could not have been manufactured after June 3, 1986, the date Aircap sold the K&S product line to the MTD defendants.

**5.** Hanson Corp. and Hanson Industries were also named as defendants in the original complaint. Dobbelaere later dismissed these defendants without prejudice and with the reservation of rights to refile at a later date.

**6.** The Cosco defendants consequently filed a cross-claim action against TSC.

Dobbelaere's amended complaint also sounded in actions for negligence, strict liability and breach of warranty. Essentially, Dobbelaere alleged that either the Cosco defendants, K&S, Aircap, or the MTD defendants manufactured the product that caused the injury. The complaint also included an action for successor liability for the manufacturer of the brush cutter. The claim against TSC remained one of seller's liability.

Additionally, the Cosco defendants filed a cross-claim against Aircap and the MTD defendants. The basis of this cross-claim included, but was not limited to, an allegation that Aircap assumed the liability for the brush cutter and agreed to indemnify and to hold harmless the Cosco defendants when it purchased the K&S product line.[7] Similarly, the MTD defendants were alleged to be the successor or parent corporation of Aircap.

The Cosco defendants, the MTD defendants, and TSC each filed motions for summary judgment on the amended complaint, third-party complaint, and cross-claims. For purposes of clarity we will only address that portion of the action that is currently before this court, the action by Dobbelaere as set forth in her amended complaint.[8]

On July 28, 1997 the Paulding County Common Pleas Court granted summary judgment to the Cosco defendants, the MTD defendants, and TSC on Dobbelaere's amended complaint. In essence, the trial court found that (1) with regard to TSC, no genuine issue of material fact existed suggesting that the manufacturer of the product was not subject to judicial process in Ohio or was insolvent;[9] (2) Dobbelaere failed to establish which defendant actually manufactured the brush cutter, therefore defeating claims for negligence, strict liability, breach of warranty, or successor liability against the Cosco and MTD defendants; and (3) the Cosco defendants were entitled to summary judgment on their claim against Aircap and the MTD defendants for assumption of liability and indemnification.

From this decision Dobbelaere asserts the following three assignments of error as her appeal.[10]

---

7. Excluding the characteristic defect that was the subject of the report to the Consumer Products Safety Commission.

8. As part of its judgment entry the trial court stated that "this Judgment Entry disposes of all of the claims asserted by the [Dobbelaeres] against all of the defendants * * *. [A]lthough the issue of the monetary recovery to which [the Cosco defendants] may be entitled to against [Aircap and the MTD defendants] remains to be determined and, pursuant to Rule 54(B) of the Ohio Rules of Civil Procedure, their is no just reason for delay with regard to the claims of the [Dobbelaeres] against the various defendants."

9. Both are necessary in an action for supplier liability under R.C. 2307.78(B).

10. At oral argument before this court, counsel for Dobbelaere apparently abandoned the theories set forth in the various memoranda in opposition to the various summary judgment

"I. The trial court erred in granting defendants' motion for summary judgment because a genuine issue of material fact exists as to whether [the MTD defendants], as successor corporation[s], [are] liable to plaintiff-appellants.

"II. The lower court erred in granting summary judgment for the defendants when reasonable minds could conclude that genuine issues of material fact existed as to Tractor Supply Company's liability as a supplier pursuant to Section 2307.78(B) of the Ohio Revised Code.

"III. The trial court erred in granting defendants' motion for summary judgment because a genuine issue of material fact exists regarding Cosco's liability as the manufacturer of the defective product."

Before addressing the merits of Dobbelaere's assigned errors, we must set forth the standard of review for a motion for summary judgment.

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192; see, also, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R.

---

motions, as well as these assigned errors in the appellate brief. Counsel now alleges that the brush cutter was manufactured years earlier by K&S when it was a wholly owned subsidiary of Kidde, and before Cosco purchased the assets of K&S. Although the facts of this case are extremely sparse, hindering this court's ability to determine what corporation manufactured the brush cutter, the following is clear. The argument set forth by appellants' counsel at oral argument is completely without merit. The affidavit of Robert Craig, a retired engineer from Cosco, was, until oral argument, undisputed evidence that the brush cutter was not manufactured until at least August 15, 1984. Appellant's counsel does not dispute this affidavit directly, but failed to demonstrate any reason whatsoever why this court should not believe the contents of the affidavit for purposes of this appeal. Therefore, we reject the oral argument of Dobbelaere's counsel in whole, and will proceed with Dobbelaere's appeal as it appears in the brief.

56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

Summary judgment is a procedure designed to cut short the normal litigation process and thus end the process when there is no issue for trial. *Murray v. Murray* (1993), 89 Ohio App.3d 141, 144–145, 623 N.E.2d 1236, 1238–1239. Therefore, courts must proceed cautiously and award summary judgment only when appropriate. *Id.* Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140. The standard of review of a summary judgment is the same for both trial and appellate courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200.

For purposes of clarity, we will address Dobbelaere's third assigned error first, followed by the first and second assigned errors, as presented.

In her third assignment of error Dobbelaere alleges that the trial court erred in granting summary judgment to the Cosco defendants. Specifically, Dobbelaere contends that a genuine issue of material fact exists regarding whether the Cosco defendants were the manufacturers of the brush cutter that caused her injuries.

Although we agree that a factual question remains unanswered about which party manufactured the brush cutter, the question is not a genuine issue of material fact. The scant amount of evidence that does exist absolves the Cosco defendants from liability for manufacturing the brush cutter that injured Dobbelaere.

"The general rule in products liability is that a successor corporation's amenability to suit will depend on the nature of the transaction which gave rise to the change in ownership. 1 Frumer & Friedman, Products Liability (1983) 70.58(3), Section 5.06[2]. Where the transfer is accomplished by means of a statutory merger or consolidation, the liability of the former corporation will be assumed by the new entity. *Id. Where there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortious conduct unless one of the following four exceptions applies:*

"(1) *the buyer expressly or impliedly agrees to assume such liability;*

"(2) the transaction amounts to a de facto consolidation or merger;

"(3) the buyer corporation is merely a continuation of the seller corporation; or

"(4) the transaction is entered into fraudulently for the purpose of escaping liability. *Id.* at 70.58(4)." (Emphasis added.) *Flaugher v. Cone Automatic Mach. Co.* (1987), 30 Ohio St.3d 60, 62, 30 OBR 165, 167, 507 N.E.2d 331, 334; *Welco Ind., Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129, syllabus.

█ Under the first exception to successor nonliability, the successor corporation can be liable if it expressly agrees to assume the liability of the predecessor corporation. This exception applies to the present action.

The affidavit of Robert Craig provides that August 15, 1984 was the earliest date the brush cutter could have been manufactured. Cosco was the owner of the K&S product line on that date. Cosco sold the assets of the K&S product line to Aircap in January 1985. The Agreement of Purchase and Sale of Assets between Cosco and Aircap provided that Aircap would assume all liabilities for personal injury caused by the K&S product line except liabilities arising out the defect characteristic of the brush cutter addressed in the report to the Consumer Products Safety Commission.

The only evidence in the record demonstrates that the brush cutter in the present case was manufactured after that defect was remedied, and that the injury Dobbelaere sustained is in no way related to that defect. Additionally, Aircap expressly assumed all liability for the product, except as stated above.

Therefore, construing the evidence in a light most favorable to Dobbelaere, the Cosco defendants successfully transferred all liability, for the purposes of this case, to Aircap. Even if Cosco manufactured the brush cutter that injured Dobbelaere, liability rests with the successor to the product line. Dobbelaere's third assignment of error is not well taken, and the judgment of the Paulding County Common Pleas Court with respect to the Cosco defendants is affirmed.

In her first assigned error Dobbelaere asserts that the trial court erred by granting summary judgment to the MTD defendants. Dobbelaere argues that even if the MTD defendants did not manufacture the brush cutter, they are ultimately liable under the theory of successor corporation liability. Evidence in the record suggests that the brush cutter was manufactured between August 15, 1984 and June 3, 1986, when the MTD defendants purchased the K&S product line. Although we agree with Dobbelaere on this assertion, we affirm the judgment of the trial court for the reasons that follow.

As stated above, a successor corporation is not held liable for the seller corporation's tortious conduct where there is merely a sale of a corporation's assets unless the buyer expressly agrees to assume such liability. *Flaugher v.*

*Cone Automatic Mach. Co.*, 30 Ohio St.3d at 62, 30 OBR at 167–168, 507 N.E.2d at 334; *Welco Ind., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 617 N.E.2d 1129 at syllabus. The Sale of Assets Agreement between Aircap and the MTD defendants contained an assumption-of-liabilities provision. Therefore, when the MTD defendants purchased the K&S product line from Aircap, they assumed the same liability Aircap held when it owned the K&S product line.

As we stated previously, Aircap assumed any liability for personal injuries caused by the brush cutter from the Cosco defendants, excluding liability for the defect reported to the Consumer Products Safety Commission in August 1984. The brush cutter that injured Dobbelaere did not contain that defect. Therefore, if Cosco manufactured the brush cutter that injured Dobbelaere, the liability passed to Aircap and then onto the MTD defendants. Likewise, if Aircap manufactured the brush cutter, any liability passed from Aircap onto the MTD defendants when they purchased the K&S product line. The MTD defendants hold the liability for personal injuries the brush cutter caused Dobbelaere under the theory of successor corporate liability.

However, this does not end our analysis. Dobbelaere made two critical procedural errors that prevent her from further pursuing her claim against the MTD defendants. First, Dobbelaere failed to timely state a claim for relief against MTD. Secondly, Dobbelaere failed to respond to a discovery request containing nine requests for admissions propounded to her by the MTD defendants.

In her amended complaint Dobbelaere alleges that the manufacturer of the brush cutter, or a successor, is liable on the basis of negligence, strict product liability and breach of warranty. The statute of limitations in effect at the time of this action for allegations of this nature was two years. R.C. 2305.10. Dobbelaere sustained her injury on August 5, 1992.

The amended complaint was filed two years and eleven months after the injury on July 24, 1995. Dobbelaere identified MTD as a party-defendant for the first time in her amended complaint. She did not attempt to substitute MTD for a John Doe originally identified in her first complaint [11] under the relation-back provisions of Civ.R. 15(C) and (D). Rather, Dobbelaere attempted to add MTD as a party-defendant in the action by means of the amended complaint.

Even if Dobbelaere asserted that Civ.R. 15(C) allowed her to add MTD as a party defendant, the procedural defect could not be cured. Civ.R. 15 provides:

"(C) *Relation back of amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set

---

11. Dobbelaere substituted Aircap for John Doe One, and AIC for John Doe Two.

forth * * * in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, *within the period provided by law for commencing the action against him,* the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

 "Civ.R. 15(C) may be employed to substitute a party named in the amended pleading for a party named in the original pleading to permit the amended pleading to relate back to the date of the original pleading, provided the requirements of the rule are otherwise satisfied. (*Cecil v. Cottrill* [1993], 67 Ohio St.3d 367, 618 N.E.2d 133, approved and followed.) Additionally, the rule may not be employed to assert a claim against an additional party while retaining a party against whom a claim was asserted in the original pleading." *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323, paragraph one of the syllabus.

 Dobbelaere attempted to add MTD as a party-defendant, not substitute it for a party in original complaint. Therefore, Dobbelaere missed the filing date by approximately eleven months with respect to MTD.

Additionally, Dobbelaere failed to respond to a discovery request containing nine requests for admissions propounded to her by the MTD defendants. Although the action against MTD is time-barred, an action against the other MTD defendant, AIC, is not. However, Dobbelaere's failure to respond at all to the requests for admission, in essence, bars her action against AIC.

Civ.R. 36 states:

"(A) Request for admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request that relate to statements or opinions of fact or the application of law to fact, including the genuineness of any documents described in the request. * * *

* * * The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow * * *.

" * * * *

"(B) Effect of admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."

The MTD defendants moved for summary judgment against Dobbelaere on the ground that among other things, Dobbelaere failed to respond to the MTD defendants' requests for admissions. As part of the supplemental motion filed on July 1, 1996, the MTD defendants included the text of the requests and a copy of the certificate of service on Dobbelaere's counsel. Dobbelaere has never responded to the requests for admissions.

"It is * * * settled law in Ohio that unanswered requests for admission render the matter requested conclusively established for the purpose of the suit, *Cleveland Trust Co. v. Willis* (1985), 20 Ohio St.3d 66, 20 OBR 364, 485 N.E.2d 1052, and a motion for summary judgment may be based on such admitted matter. *Weva Oil Corp. v. Belco Petroleum Corp.* (1975), 68 F.R.D. 663; *Luick v. Graybar Elec. Co.* (1973), 473 F.2d 1360; *First Natl. Bank Co. v. Ins. Co.* (1979), 606 F.2d 760; *St. Paul Fire & Marine Ins. Co. v. Battle* (1975), 44 Ohio App.2d 261, 73 O.O.2d 291, 337 N.E.2d 806. Failure to answer is not excused because the matters requested to be admitted are central or noncentral to the case or must be proven by the requesting party at trial. See *Youssef v. Jones* (1991), 77 Ohio App.3d 500, 602 N.E.2d 1176." *Klesch v. Reid* (1994), 95 Ohio App.3d 664, 674, 643 N.E.2d 571, 577–578; *T & S Lumber Co. v. Alta Constr. Co.* (1984), 19 Ohio App.3d 241, 243–244, 19 OBR 393, 394–397, 483 N.E.2d 1216, 1218–1220. "[W]here a party files a written request for admission[,] a failure of the opposing party to timely answer the request constitutes a conclusive admission pursuant to Civ.R. 36 and also satisfies the written answer requirement of Civ.R. 56(C) in the case of a summary judgment." *Id.* at 675, 643 N.E.2d at 578.

Therefore, the following request from AIC propounded onto Dobbelaere is admitted for summary judgment purposes. AIC requested that Dobbelaere "admit that as to MTD Products Inc. and Aircap Industries Corporation cannot be liable in negligence, breach of express and implied warranties and strict liability in design, manufacture, and failure to warn."

Construing the evidence in a light most favorable to Dobbelaere, the trial court's decision to grant summary judgment in favor of the MTD defendants was proper and is, therefore, affirmed.

In her second assigned error Dobbelaere contends that the trial court erred in granting summary judgment to TSC when reasonable minds could conclude that genuine issues of material fact existed as to TSC's liability as a supplier/seller of the brush cutter pursuant to Section 2307.78(B) of the Ohio Revised Code.

R.C. 2307.78(B) states:

"[a] supplier of a product is subject to liability for compensatory damages based on a product liability claim * * * as if it were the manufacturer of that

product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim * * * and *any of the following applies:*

"(1) The manufacturer of that product is not subject to judicial process in this state;

"(2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer;

" * * * or

"(8) The supplier in question failed to respond timely and reasonably to a written request by or on behalf of the claimant to disclose to the claimant the name and address of the manufacturer of that product." (Emphasis added.)

"Supplier liability" as set forth in R.C. 2307.78(B) is one of substitution, holding that the supplier is liable instead of an absent culpable party. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.* (1995), 107 Ohio App.3d 218, 230, 668 N.E.2d 529, 537. The burden of establishing the foregoing is on the claimant to prove by a preponderance of the evidence. R.C. 2307.78; 3 Ohio Jury Instructions (1996), Section 351.27(2).

We have already determined that either Cosco or Aircap manufactured the brush cutter that injured Dobbelaere. At the time suit was filed in this action, Cosco was a solvent corporation subject to judicial process in this state. Aircap, on the other hand, never filed an answer to Dobbelaere's amended complaint, or otherwise appeared in this action.

Dobbelaere failed to present any evidence that Aircap was either insolvent or not subject to judicial process in this state. The record reflects that the Delaware Secretary of State accepted service on the amended complaint for Aircap. The only other relevant evidence in the record as to the status of Aircap was a letter to Cosco's counsel from CT Corporation System, the former statutory agent for Aircap. The letter stated that "Aircap Industries, Inc. is inactive on the records of the Secretary of State of Delaware." However, this letter does not indicate whether Aircap was subject to service of process or whether it is insolvent. The evidence fails to demonstrate a genuine issue of material fact regarding either of these bases for seller's liability pursuant to R.C. 2307.78(B).

Similarly, the record does not reflect a genuine issue of material fact regarding R.C. 2307.78(B)(8). That provision states that "the supplier in question failed to respond timely and reasonably to a written request by or on behalf of the claimant to disclose to the claimant the name and address of the manufacturer of that product." R.C. 2307.78(B)(8).

Dobbelaere propounded her original complaint, first set of interrogatories, requests for admissions, and requests for production on TSC on July 26, 1994. Interrogatory No. 2 asked TSC to identify the name of the corporation that manufactured the Trim All Model TA–1200 brush cutter "as identified in Plaintiffs' Exhibit 'A'." Although Dobbelaere did not attach exhibit "A" to her discovery requests, TSC, after objecting to the question, responded to the interrogatory. TSC stated that "[b]ased upon currently available information and reasonable belief, K&S Industries, Inc." manufactured the brush cutter.

Dobbelaere attempts to argue that TSC's response to the interrogatory was unreasonable because the evidence now reveals that either Cosco or Aircap manufactured the brush cutter that caused Dobbelaere injury. Dobbelaere also argues that TSC's failure to provide documentary evidence of the identity of the manufacturer was unreasonable. We disagree.

Dobbelaere propounded her discovery requests to TSC at the time she filed her original complaint. At that time, it was reasonable for the supplier of the brush cutter to believe that the manufacturer of the brush cutter was the same entity whose name appeared on the shaft of the product. After more extensive discovery took place, primarily by the various defendants, third-party defendants, and cross-claimants, the identity of the manufacturer was narrowed down to two manufacturers.

The record demonstrates that either Cosco or Aircap manufactured the brush cutter under the K&S product-line name. The affidavit of Robert Craig established the first possible date of manufacture of the brush cutter that injured Dobbelaere at a date well after K&S, when it was a wholly owned subsidiary of Kidde, could have manufactured the brush cutter. It was reasonable for this evidence to first appear well into the discovery process, and not at the time the answer to the complaint was due. Therefore, no genuine issue of material fact exists demonstrating that TSC could be liable to Dobbelaere under the theory of supplier liability as set forth in R.C. 2307.78(B).

Based on the foregoing, we find that construing the evidence most strongly in favor of Dobbelaere no genuine issue of material fact exists, and that reasonable minds can come to but one conclusion, that conclusion being that the Cosco defendants, the MTD defendants, and TSC are entitled to judgment in their favor as to all claims asserted by Dobbelaere as a matter of law. We, therefore, affirm the judgment of the Paulding County Common Pleas Court.

*Judgment affirmed.*

EVANS, P.J., and SHAW, J., concur.