OPINION
In January 1997, Jana Vawter initiated a lawsuit in the Franklin County Court of Common Pleas as the result of severe personal injuries she sustained in a three-vehicle collision. Ms. Vawter's complaint named as defendants Mark Walker and Nick Clute, the drivers of the other two vehicles. Select Transportation, Inc. ("STI"), Clute's employer for whom he was driving, was also made a defendant.
The facts giving rise to the accident are essentially undisputed. On February 17, 1996, Ms. Vawter was driving northbound on Interstate 71, at the same time Mr. Walker was traveling southbound. Walker lost control of his vehicle, crossed the median, and struck Vawter's vehicle head-on. At the same time, Mr. Clute was driving a semi-truck northbound on Interstate 71, directly behind Vawter. When Walker struck Vawter head-on, it sent her car into a spin. Clute was unable to stop his semi; as a result, he rear-ended Vawter's car. Clute was cited for failure to maintain an assured clear distance ahead ("ACDA"). Walker was cited for, and eventually pled no contest to, failure to control his vehicle.
Ms. Vawter's complaint alleged that Walker was negligent in "driving his vehicle left of center and in failing to maintain control" of his vehicle. Her claim against Clute and STI alleged negligence based upon the ACDA, and related theories: "failing to have said semi-truck under control, in not operating said truck in a reasonably prudent and careful manner in view of the snowy and slippery conditions existing at said time and in "failing to avoid striking Plaintiff's automobile in the rear." (Complaint, at 2.)
In response to Ms. Vawter's complaint, separate answers were filed on behalf of the respective defendants in which they generally denied all allegations of negligence.
STI and Clute also filed cross-claims against defendant Walker, seeking indemnity or contribution from Walker if STI and Clute were ultimately found liable to Vawter; STI also sought recovery from Walker for property damage to its semi.
A separate lawsuit arising from this accident was filed on behalf of the city of Columbus. The city sought recovery against the same defendants for damages to city property arising from the accident. The trial court ultimately granted a defense motion to consolidate the two cases.
At the time of the accident, Walker carried liability coverage in the amount of $50,000 per person per occurrence. Mr. Clute, via his employer, STI, carried $1,000,000/$5,000,000 in liability coverage. Pursuant to an "agreed partial dismissal entry" filed in June 1998, Ms. Vawter's claims against Clute and STI were dismissed with prejudice, the claims "having been voluntarily settled." Specifically, Ms. Vawter accepted the sum of $700,000 to resolve her claims against Clute and STI.[1]
The entry further indicated that Ms. Vawter's claims against Mr. Walker remained "pending and * * * unaffected" by the dismissal of Clute and STI.
After receiving the $700,000 in settlement proceeds from Clute and STI, Ms. Vawter then sought the $300,000 limits of an uninsured/underinsured motorist ("UM") policy she carried with Nationwide Insurance Enterprise, dba Nationwide Mutual Insurance Company ("Nationwide"). When Nationwide denied her claim, the trial court granted Ms. Vawter leave to file a "first amended complaint," in which she named Nationwide as a party defendant.[2]
The amended complaint, filed August 4, 1998, left Mr. Walker and Nationwide as the only defendants. In essence, the amended complaint alleged that Vawter was entitled to collect UM benefits because her damages were far in excess of Walker's $50,000 liability limits.
In its answer to the amended complaint, Nationwide denied, for numerous reasons discussed below, that its insured was entitled to UM benefits. Nationwide also filed a counterclaim and cross-claim against, respectively, Vawter and Walker. The counterclaim against Vawter alleged that Nationwide had paid her $50,000 under its UM coverage. In turn, Ms. Vawter executed a document entitled "Trust Agreement for Pre-Payment of Tortfeasor's Bodily Injury Liability Limits under Underinsured Motorists Coverage," a copy of which was appended to the counterclaim. The terms of the trust agreement contained, inter alia, Vawter's acknowledgement of the receipt of the $50,000 (tortfeasor Walker's policy limits with his carrier, Allstate Insurance) and her agreement "to hold in trust for Nationwide any money she received from any liable party." The counterclaim alleged that Vawter breached her contractual obligation to Nationwide by failing to reimburse it for the $50,000 after she received the $700,000 settlement from the "persons liable," Clute and STI. In its cross-claim, Nationwide alternatively sought this $50,000 from defendant Walker.
In December 1998, Ms. Vawter voluntarily dismissed Mr. Walker as a defendant in the case.
During the course of discovery proceedings, Nationwide submitted requests for admissions to Ms. Vawter pursuant to Civ.R. 36. In response, Vawter admitted, inter alia, that Clute and STI were "parties liable" for her injuries.
Ms. Vawter subsequently sought leave to withdraw these particular admissions for the purpose of pursuing her Nationwide UM coverage. The trial court denied her motion for leave to amend her previous admissions.
Nationwide ultimately filed a Civ.R. 56(C) motion for summary judgment, contending that its insured, Ms. Vawter, was not entitled to collect under her UM policy.
In support of its motion, Nationwide made the following arguments. First, the UM policy was never "triggered" under Ohio's UM statute, R.C. 3937.18, because the settlement amount their insured received was greater than the $300,000 limits of her UM coverage. Further, even if UM coverage was triggered, Nationwide would be entitled to "set off" the $50,000 and $700,000 settlements against Ms. Vawter's $300,000 UM coverage. In addition, Nationwide contended that their insured failed to exhaust the total liability coverage of Clute and STI prior to asserting her UM claim. Thus, in essence, Ms. Vawter "abandoned" her UM claim by settling with Clute and STI for substantially less than the policy limits.
The trial court ultimately granted summary judgment to Nationwide pursuant to an entry journalized January 4, 1999. The court agreed with Nationwide's primary assertion that UM coverage was never triggered because the settlement proceeds she received exceeded the amount of her UM coverage.
Jana R. Vawter (hereinafter "appellant") has timely appealed, assigning two errors for our consideration:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF JANA VAWTER IN GRANTING DEFENDANT NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT ACTED UNREASONABLY AND ERRED TO THE PREJUDICE OF PLAINTIFF JANA VAWTER IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND HER RESPONSES TO CERTAIN OF DEFENDANT NATIONWIDE'S CIVIL RULE 36 REQUESTS FOR ADMISSIONS.
In her first assignment of error, appellant contends that the trial court erred in granting summary judgment to Nationwide when it held, as a matter of law, that appellant's UM coverage was never "triggered" because the settlement proceeds she received from Clute and STI ($700,000) were greater than her $300,000 UM coverage.
Appellant's second assignment of error contends that the trial court abused its discretion in refusing to allow her to amend her admissions that Clute and STI were at least partially liable to her, admissions which provided a significant basis for the trial court's disposition of the summary judgment motion. The assignments of error overlap to the extent they both involve appellant's contention that a jury should determine whether Clute and STI were "parties liable."
We address the second assignment of error first.
Civ.R. 36 governs the request-for-admissions procedure. Civ.R. 36(B) speaks directly to the effect of admissions:
 Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. (Emphasis added.)
In reviewing this assignment of error, we are bound by an abuse of discretion standard. Absent a showing that the trial court's attitude was unreasonable, arbitrary or unconscionable, we will not disturb the court's exercise of its sound discretion.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
As indicated infra, appellant, in her responses to Nationwide's requests for admissions, affirmatively admitted more than once that Clute and STI were "parties liable" for the injuries she sustained in the accident. The trial court found that appellant, "after receiving Clute's $700,000 settlement payment," then sought to withdraw these admissions of liability "for the sole purpose of pursuing UM coverage from Nationwide." (Decision at 2.) This conclusion is well supported by the record. Appellant offers no justification such as mistake, new evidence or clerical error, for example, for seeking withdrawal of the admissions; notwithstanding her admissions and the state of the record, appellant simply argues a bare assertion that the UM "situation * * * changes dramatically" if a jury were to decide that Mark Walker was the "sole liable party."
Even if the trial court had allowed withdrawal of the admissions of liability, the record overwhelmingly supports a finding that there is no genuine issue of material fact that Clute and STI were "parties liable" to appellant, and appellant points to nothing in the record suggesting otherwise. In her initial complaint, appellant herself alleged with specificity the negligence by Clute, and thus STI as his employer. She alleged that Clute failed to control his vehicle and, as a result, was guilty of ACDA. Arguably, the best evidence of the parties' conclusions regarding liability is the payment by Clute and STI of $700,000 to appellant, who, in turn, fully released them from any future claims arising from the accident.
The trial court specifically found that allowing withdrawal of the admissions would not aid in resolving the merits of the case, the core issue being a legal one — whether or not appellant is entitled to UM coverage. The trial court also implicitly found that Nationwide had sufficiently demonstrated that allowing such an amendment at that stage of the proceedings would unduly prejudice Nationwide in preparation of its case. SeeCleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66, 67, citing Balsom v. Dodds (1980), 62 Ohio St.2d 287, paragraph two of the syllabus. The record supports both findings.
Appellant has not demonstrated an abuse of discretion by the trial court in denying appellant's motion to amend her responses to Nationwide's request for admissions.
The second assignment of error is overruled.
Turning to the first assignment of error, we now address the merits of the trial court's grant of summary judgment to Nationwide on the issue of entitlement to UM coverage.
Preliminarily, we set forth the standard of review by which we are bound in reviewing the grant of a Civ.R. 56(C) summary judgment motion. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there are no genuine issues of material fact; (2) the moving party is entitled to judgment as a matter of law; and, (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor SoccerClub, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35.
Ohio's UM statute, R.C. 3937.18, that version in effect at the relevant time, provides, in pertinent part:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered * * * in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
Uninsured motorist coverage * * *.
 (2) Underinsured motor coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury * * * suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. (Emphasis added.)
The heart of appellant's argument under this assignment of error is that the trial court should not have "assumed" that Clute and STI were "persons liable" for purposes of UM coverage. According to appellant, the issue of who was liable to her should have been determined by a jury.
Based upon the express language of R.C. 3937.18(A)(2), we reject appellant's arguments and find that the trial court correctly granted summary judgment in favor of Nationwide. The unambiguous language of R.C. 3937.18(A)(2) mandates no other reasonable conclusion.
In its simplest terms, the statute provides that UM coverage is triggered when the liability coverage of "person or persons liable" is less than the UM coverage. In contrast, where, as here, the liability coverage of "person or persons liable" isgreater than the UM coverage, there is no legitimate UM claim. In the case of joint tortfeasors, the plain language of the statute requires that all liability bonds and insurance policies for all "persons liable" to the insured be considered in toto. In other words, the amounts of the respective policies of all "persons liable" should be added in order to determine the "limits under all * * * policies covering persons liable to the insured." (Emphasis added.) Only after making such a determination of the total amount of all policies should the comparison analysis be undertaken. In this case, Clute and STI had coverage well in excess of the $700,000 settlement; Mark Walker carried $50,000 of liability coverage. Thus, the total limits of liability coverage available for payment in this case exceeded $750,000. By comparison, appellant's UM policy with Nationwide provided her with a lesser amount, $300,000. Since the combined liability coverage exceeds the UM coverage, the UM coverage was never triggered. As observed by the trial court in reaching this conclusion, the provision explicitly states that UM coverage is not intended to provide "excess insurance" coverage under circumstances such as those presented here.
In Fidelholtz v. Peller (1998), 81 Ohio St.3d 197, the Supreme Court of Ohio addressed issues pertaining to joint tortfeasors' rights of contribution. The court held that a defendant is entitled, under R.C. 2307.32(F), to set off from a judgment "funds received by a plaintiff pursuant to a settlement agreement with a co-defendant" when there has been a determination that the "settling co-defendant is a person `liable in tort.'"Id., syllabus. The court further held at the syllabus that a person is "liable in tort" when he or she "acted tortiously and thereby caused damages." Significantly, the court explicitly decided that "[t]his determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself." Id.
With respect to appellant's aforementioned Civ.R. 36 admissions, it is well-settled that a summary judgment motion may be based upon such admissions. See, e.g., Dobbelaere v. Cosco,Inc. (1997), 120 Ohio App.3d 232, 244.
Given the state of the record before us, the trial court did not err in granting summary judgment to Nationwide based upon the court's determination that Clute and STI were "parties liable" and, accordingly, no entitlement to UM coverage was triggered.
The first assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
DESHLER and PETREE, JJ., concur.
[1] The same entry states that the "cross-claims of Defendant Walker against Defendant[s] Clute and [STI] are also hereby dismissed with prejudice." Our review of the record suggests that the entry is erroneous insofar as Clute and STI filed cross-claims against Walker, as indicated infra, not the inverse.
[2] A second amended complaint was filed later in the litigation, adding a "bad faith" claim against Nationwide.