[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 197.]

FIDELHOLTZ ET AL., APPELLANTS, *v.* PELLER ET AL.; ONG ET AL., APPELLEES.

[Cite as *Fidelholtz v. Peller*, 1998-Ohio-462.]

*Torts—Person "liable in tort," when—Joint tortfeasors—Enforcement of right of contribution—Former R.C. 2307.32(F) (now R.C. 2307.33[F]), construed and applied.*

Former R.C. 2307.32(F) (now R.C. 2307.33[F]) entitles a defendant to set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person "liable in tort." A person is "liable in tort" when he or she acted tortiously and thereby caused damages. This determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself. (*Ziegler v. Wendel Poultry Serv., Inc.* [1993], 67 Ohio St.3d 10, 615 N.E.2d 1022, overruled to the extent inconsistent herewith.)

(No. 96-1777—Submitted October 22, 1997 at the Muskingum County Session—
Decided March 11, 1998.)

APPEAL from the Court of Appeals for Stark County, No. 1995CA00340.

————————

{¶ 1} Plaintiff-appellant, Bernice Fidelholtz, in her mid-sixties, had pain and discomfort in her right leg which prompted her to visit her family doctor in 1991. The family doctor referred her to a surgeon, who conducted a biopsy of a growth on her leg. The surgeon sent the tissue sample to defendant-appellee, Dr. Marino G. Ong, a pathologist, for diagnosis.

{¶ 2} The sample was divided into four "blocks." By cutting tissue from these blocks, twenty slides were generated. Upon examining the slides, Dr. Ong noticed several abnormal features, in particular, an abnormal mitotic figure on slide

number four.  Dr. Ong was concerned with this finding because the presence of abnormal mitotic figures often indicates that a tumor is malignant.  After consulting with his colleagues, and unable to make a definitive diagnosis, Dr. Ong ordered that "recuts" be made from block numbers one, three, and four, generating additional slides.  Still uncertain, Dr. Ong decided to consult the Cleveland Clinic ("CC").  He sent three slides to CC.  All were recuts, *i.e.*, none were originals, including slide number four.

{¶ 3} Dr. Bruce A. Sebek, a pathologist, examined the slides at CC.  Based on these slides, Dr. Sebek concluded that the growth in Mrs. Fidelholtz's leg was benign.  At trial, Dr. Sebek testified that had he seen the original slide number four, instead of a recut, he would have diagnosed malignancy.  He testified that the recut did not show the abnormal mitotic figure that caused concern to Dr. Ong.

{¶ 4} Dr. Sebek forwarded his diagnosis to Dr. Ong.  Dr. Ong adopted this diagnosis and notified Mrs. Fidelholtz's surgeon of the findings, which he passed on to her.

{¶ 5} Two years passed.  Mrs. Fidelholtz's pain continued.  In March 1993, Mrs. Fidelholtz underwent outpatient surgery at Timken Mercy Medical Center.  The growth in her leg was diagnosed as malignant.  As a result of the untimely diagnosis, Mrs. Fidelholtz's leg was amputated below the knee.  If the cancer had been diagnosed in 1991, an amputation would have been unnecessary.

{¶ 6} Mrs. Fidelholtz and her husband Irving, appellants, filed suit against Dr. Ong; his employer, Aultman Pathology Associates, Inc.; and Dr. Sebek and Cleveland Clinic Foundation ("CCF"),[1] alleging negligent misdiagnosis of cancer.  Approximately one month prior to trial, Dr. Sebek and CCF settled for $125,000.  The case proceeded to trial against Dr. Ong and his employer, appellees.

---

1. Dr. Charles Peller (the surgeon) and his corporation, Charles H. Peller, M.D., Inc., were also named as defendants.  Appellants voluntarily dismissed them from the suit prior to trial.

**{¶ 7}** At trial, appellees denied liability on the theory that Dr. Ong's misdiagnosis did not constitute negligence, since this was an extremely difficult case to diagnose. Dr. Ong and his expert witness testified that neither Dr. Ong nor Dr. Sebek deviated from acceptable standards of care. Although appellants agreed that Dr. Sebek was not negligent, their expert witness (Dr. Sebek) testified that Dr. Ong deviated from the standard of care when he failed to send slide number four to him.

**{¶ 8}** The jury returned a verdict in favor of appellants and awarded damages in the amount of $250,001. (The $1 was for Mr. Fidelholtz's loss of consortium claim.)

**{¶ 9}** Appellees filed a motion for judgment notwithstanding the verdict, claiming that pursuant to former R.C. 2307.32(F), the award should be offset by $125,000, the amount that appellants received in settlement from Dr. Sebek and CCF. The trial court granted the motion based upon *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 615 N.E.2d 1022.

**{¶ 10}** The court of appeals affirmed. In a separate concurrence, Judge Hoffman urged us to reconsider the *Ziegler* decision.

**{¶ 11}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

––––––––––––––––––

*Allen Schulman & Associates Co., L.P.A.,* and *Allen Schulman, Jr.*, for appellants.

*Roetzel & Andress, Thomas A. Treadon* and *Sue Ellen Salsbury*, for appellees.

––––––––––––––––––

**FRANCIS E. SWEENEY, SR., J.**

**{¶ 12}** We are asked to decide whether former R.C. 2307.32(F), now 2307.33(F),[2] entitled a nonsettling defendant to set off funds received by a plaintiff pursuant to a settlement agreement with a co-defendant who was never determined to be a tortious party. Because we find that former R.C. 2307.32(F) required that the settling defendant must first be found to be "liable in tort" before a setoff is permitted, we reverse the judgment of the court of appeals and reinstate the jury verdict of $250,001 against appellees.

**{¶ 13}** Former R.C. 2307.32(F) provided:

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons *liable in tort* for the same injury or loss to person * * *, the following apply:

"(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury * * * unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater;

"(2) The release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." (Emphasis added.) 142 Ohio Laws, Part I, 1673.

**{¶ 14}** This court had the opportunity to construe former R.C. 2307.32(F) in *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 615 N.E.2d 1022. Appellees contend that *Ziegler* is supportive of their position that they are entitled to a setoff.

**{¶ 15}** The facts in *Ziegler* reveal that on the first day of trial, two of the defendants, Wendel Poultry and its employee, Terry Hummel (collectively, "Wendel"), informed the court that they had entered into a "high-low" settlement

---

2. The statutes referred to in this opinion are the former versions that existed before the Am.Sub.H.B. No. 350 amendment effective January 27, 1997.

agreement with the plaintiff, agreeing to pay the plaintiff $325,000 regardless of the jury verdict and up to $425,000 if the jury found it (Wendel) liable. The fact of the settlement was not revealed to the jury, and Wendel remained in the lawsuit. The positions of Wendel and the other defendant were adversarial, and Wendel presented its case with vigor. The jury found the co-defendant liable and Wendel not liable. In accordance with the settlement agreement, Wendel paid the plaintiff $325,000. The trial court refused to set off this amount from the total jury award pursuant to former R.C. 2307.32(F).

{¶ 16} On appeal to this court, the plaintiff argued that the trial court correctly refused to reduce the award because Wendel was found not to be liable and, thus, was not a joint tortfeasor. This court rejected that argument, finding that the setoff provision of former R.C. 2307.32(F) should be applied to reduce the total award. We held that there need not be a judicial determination of liability for a settling defendant to be considered a tortfeasor within the meaning of the contribution statutes. Even though the jury had found Wendel not liable, this court found pertinent that the agreement was executed in contemplation of the defendants' being found jointly and severally liable. Thus, we said that the situation at the time of settlement controls. We believed that a contrary holding would permit a plaintiff to obtain a double recovery, something that the statute was designed to prevent. *Id.* at 17-18, 615 N.E.2d at 1029.

{¶ 17} A majority of courts have taken a similar position. See, *e.g.*, *Nguyen v. Tilwalli* (1986), 144 Ill.App.3d 968, 99 Ill.Dec. 183, 495 N.E.2d 630; *Levi v. Montgomery* (N.D.1963), 120 N.W.2d 383. See, generally, Annotation (Supp.1989 and 1992), 34 A.L.R.2d 1107. The Restatement of Torts is in accord with this line of cases. See 4 Restatement of the Law 2d, Torts (1965), Section 885(3) and Comment *f.*

{¶ 18} Appellants argue against such an absolute rule, which provides for an automatic setoff to a nonsettling co-defendant when a co-defendant settles.

Appellants assert that this rule is unfair in cases where the defendant receiving the benefit of the settlement is the only party responsible for the injury. Instead, appellants urge this court to overrule *Ziegler* and adopt a rule of law giving the trial court discretion to determine whether the settling defendant was a person "liable in tort," which would then trigger the right of setoff.

**{¶ 19}** We agree that *Ziegler*'s absolute rule is too harsh under certain facts, such as those presented here. A settlement is not tantamount to an admission of liability. *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 198, 63 O.O.2d 364, 367, 299 N.E.2d 295, 299. Defendants settle for many reasons, such as the avoidance of bad publicity and litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships.

**{¶ 20}** Recognizing that an automatic setoff may prove unduly harsh in some cases, a minority of courts have held that there must be some showing, either by judicial determination, the release itself, or stipulations of the parties, that the settling defendant's actions contributed to the harm. *Rocco v. Johns-Manville Corp.* (C.A.3, 1985), 754 F.2d 110, 114-116. See, also, *Med. Ctr. of Delaware, Inc. v. Mullins* (Del.1994), 637 A.2d 6, 8-9; *Collier v. Eagle-Picher Industries, Inc.* (1991), 86 Md.App. 38, 56-60, 585 A.2d 256, 265-267. The rationale underpinning these holdings is that where only one of several defendants was responsible for the injury, that defendant would have been obligated to pay the entire damage amount if the settling party had not settled. Thus, the former should not reap the benefit of a settlement by the latter. *Mullins,* 637 A.2d at 9.

**{¶ 21}** We believe that these cases offer the more reasoned view. Moreover, they are in accord with our recent case of *MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.* (1997), 80 Ohio St.3d 212, 685 N.E.2d 529, the language of the statute, and the goals it seeks to accomplish.

**{¶ 22}** In *MetroHealth*, a thirty-nine-year-old woman died, allegedly because of a drug administered during a gastroscopy. Her estate sued MetroHealth

and the wrong drug company. Eventually, the estate brought in what it believed to be the responsible drug company, Hoffmann-LaRoche ("Hoffmann"). However, by this time, the statute of limitations had run and Hoffmann was dismissed from the lawsuit. MetroHealth later settled the case. MetroHealth and Hoffmann were both named in the release. MetroHealth then filed a separate action for contribution and indemnification from Hoffmann.

{¶ 23} We were asked to decide whether a right to contribution exists where the underlying claim against the responsible co-defendant was dismissed because of the statute of limitations. We answered in the affirmative. We noted that at common law, contribution, *i.e.,* the right of one who has discharged a common liability to recover from another the portion that the other should have paid, was not allowed between concurrent or joint tortfeasors. *Id.*, 80 Ohio St.3d at 214, 685 N.E.2d at 531. We found that the General Assembly enacted R.C. 2307.31 and 2307.32 to alleviate this inequity. *Id.* In enacting these statutes, the General Assembly recognized that it would be inequitable to force one defendant to bear the entire burden of compensating an injured plaintiff where the plaintiff's injuries were caused by the combined negligence of two or more tortfeasors. The statutes permit a defendant who is found jointly and severally liable for the plaintiff's injuries to recover from the other tortfeasor(s) a portion of monies paid to the plaintiff.

{¶ 24} In construing "liable in tort" in the context of former R.C. 2307.31(A), we determined that the phrase meant that the contribution defendant must have acted tortiously and thereby caused damages. *Id.* at 215, 685 N.E.2d at 532. Justice Cook, in her dissent, recognized that "liability" has been defined as " 'responsibility for torts.' " *Id.* at 218, 685 N.E.2d at 534 (Cook, J., dissenting), quoting Black's Law Dictionary (5 Ed.1979) 823. Thus, we concluded that MetroHealth's right to contribution was not extinguished by Hoffmann's dismissal from the lawsuit because of the running of the statute of limitations.

**{¶ 25}** A principle of statutory construction states that where statutory words and phrases have acquired a particular meaning, whether by legislative definition or otherwise, the words must be construed accordingly. R.C. 1.42; *Klemas v. Flynn* (1993), 66 Ohio St.3d 249, 250, 611 N.E.2d 810, 812. In *MetroHealth*, we stated that in R.C. 2307.31(A), "liable in tort" "means no more than that the contribution defendant acted tortiously and thereby caused damages." *Id.,* 80 Ohio St.3d at 215, 685 N.E.2d at 532. Having so defined "liable in tort" in one section of the Contribution Among Tortfeasors Act, we must accord the same definition to another section of the Act. This definition clearly implies that some finding of liability is required before a setoff is permitted. If the General Assembly had intended an automatic setoff, it would have used different wording. Instead of persons "liable in tort" it easily could have said "a named defendant," or words to that effect. Basic fairness and justice dictate that a tortfeasor should not benefit from a plaintiff's good fortune in reaching settlements with other potential defendants not determined to be liable. Granting a nonsettling tortfeasor an automatic setoff would subsidize tortious conduct.

**{¶ 26}** We agree with appellees that two policy objectives for these statutes were to encourage settlement and to prevent double recovery. However, we believe that the broader and more important goal was to ensure that where multiple tortfeasors were at fault in bringing about the injury to the innocent party, each tortfeasor would share the burden of making the injured party whole again. It seems only logical that a party found to have acted alone in causing the harm should not be entitled to a reduction in the damage award.

**{¶ 27}** Accordingly, we hold that former R.C. 2307.32(F) (now R.C. 2307.33[F]) entitles a defendant to set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person "liable in tort." A person is "liable in tort" when he or she acted tortiously and thereby caused harm. The

determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself. To the extent that *Ziegler* is inconsistent with the rule of law announced today, it is overruled.

{¶ 28} Here, the evidence reveals that Dr. Ong failed to forward the crucial piece of information (slide number four) to Dr. Sebek. Dr. Sebek testified that had he examined this slide, he never would have diagnosed a benign tumor. All witnesses, including Dr. Ong and his expert, were in agreement that Dr. Sebek was not negligent. Thus, appellees were solely responsible for the harm. The trial court could easily have made this determination when it was asked to rule upon the motion for judgment notwithstanding the verdict.

{¶ 29} We hold that payments made to appellants by defendants who were not determined to be persons "liable in tort" do not entitle appellees to a setoff. Accordingly, we reverse the judgment of the court of appeals and reinstate the original jury verdict of $250,001 against appellees.

*Judgment reversed*
*and verdict reinstated.*

MOYER, C.J., RESNICK and PFEIFER, JJ., concur.

DOUGLAS, J., dissents.

COOK and LUNDBERG STRATTON, JJ., separately dissent.

———————————

**COOK, J., dissenting.**

{¶ 30} Because a majority of this court misinterprets former R.C. 2307.32(F) of Ohio's Contribution Among Tortfeasors Act ("CATA"), I respectfully dissent.

{¶ 31} The majority pins its conclusion that setoff should not be permitted in this case on a mistaken interpretation of the phrase "liable in tort." The majority interprets that phrase as requiring a tort defendant against whom judgment has been entered to affirmatively demonstrate that a settling party acted tortiously and

contributed to the plaintiff's damages as a prerequisite to enforcing its right of setoff under former R.C. 2307.32(F). Apparently, the majority would require a mini-trial to determine the settling party's culpability in the absence of some admission of the settling party's fault, either by stipulation or in the settlement agreement. Such a requirement finds no support in the statutory scheme and is contrary to this court's reasoned holding in *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 615 N.E.2d 1022, the majority view of courts analyzing similar legislation,[3] and the Restatement of Torts.[4]

**{¶ 32}** Black's Law Dictionary definitions of "liable" and "liability" demonstrate that the concept is broadly defined to encompass both the ultimate legal responsibility for an act *and the potential of being held legally responsible for an act*. Black's Law Dictionary (6 Ed.1990) 914, 915. Accordingly, we need to determine which definition the legislature intended in its specific use of "liable" from its context and its application in the overall statutory scheme.

**{¶ 33}** Under either definition, this court's decision in *MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.* (1997), 80 Ohio St.3d 212, 685 N.E.2d 529, was wrong. After the applicable statute of limitations has run against an alleged tortfeasor, even the potential for being held legally responsible is gone.

---

3. See, *e.g.*, Prosser & Keeton, The Law of Torts (5 Ed.1984), Section 49; *Quick v. Crane* (1986), 111 Idaho 759, 783-784; 727 P.2d 1187, 1211-1212.

4. 4 Restatement of the Law 2d, Torts (1977) 333, Section 885(3) states:
   "A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment."
   Comment *f* to that subsection states in part:
   "Payments made by one who is not himself liable as a joint tortfeasor will go to diminish the claim of the injured person against others responsible for the same harm if they are made in compensation of that claim, as distinguished from payments from collateral sources such as insurance, sick benefits, donated medical or nursing services, voluntary continuance of wages by an employer, and the like. These payments are commonly made by one who fears that he may be held liable as a tortfeasor and who turns out not to be."

Accordingly, where a statute of limitations prohibits a plaintiff from commencing an action against an alleged tortfeasor, that party's liability cannot be "extinguished" by a later release. *MetroHealth*, 80 Ohio St.3d at 217, 685 N.E.2d at 534 (Cook, J., dissenting).

{¶ 34} Although either of Black's definitions supports the dissent in *MetroHealth*, this case requires us to choose. The majority interprets the phrase "liable in tort" to require a party seeking setoff under former R.C. 2307.32(F)(1) to affirmatively demonstrate the settling party's legal responsibility for the plaintiff's injury. In cases such as this, however, that interpretation will often enable the plaintiff to receive a double recovery — exactly the outcome that "the statute was clearly designed to prevent." *Ziegler v. Wendel Poultry Serv.,* 67 Ohio St.3d at 18, 615 N.E.2d at 1030.

{¶ 35} The majority attempts to reconcile today's opinion with *Ziegler* by noting that the agreement in *Ziegler* was executed in contemplation of the settling defendant being found jointly and severally liable. The problem with that distinction is that the settlement agreement in this case, like most if not all settlement releases, also contemplates that the settling defendant might otherwise be held legally responsible for the plaintiff's injuries. The only consideration given by the Fidelholtzes in exchange for the settlement proceeds, in fact, was to release and discharge the settling defendant from *all liability* associated with this action.

{¶ 36} The *Ziegler* court had a tougher question than this case presents. Due to the parties' "high-low" agreement, the *Ziegler* court had to determine whether former R.C. 2307.32(F) permitted setoff against a jury award despite the fact that the jury had exonerated the settling defendant. The *Ziegler* court concluded that setoff was appropriate because, *at the time of settlement*, the settling defendant *potentially* was responsible in tort for Ziegler's death. *Id.*

{¶ 37} At the time of its settlement, the potential remained that Cleveland Clinic Foundation ("CCF") would be held responsible for the Fidelholtzes' injuries.

CCF bought its peace by obtaining a settlement release. With that release, CCF bought not only an assurance that the Fidelholtzes would not later sue it for the same injury, but also that any other tortfeasor who pays a disproportionate share of the Fidelholtzes' damages could not seek contribution from CCF. Former R.C. 2307.32(F)(2). The Fidelholtzes, in turn, gained the security of the CCF settlement payment and obviated the risk that they might not be able to prove that CCF was legally responsible for their injuries.

{¶ 38} Under the statutory scheme, the Fidelholtzes are entitled only to the amount the jury determined as their total damages. Under former R.C. 2307.32(F)(1), the amount that (unbeknownst to a jury) plaintiffs have received by way of settlement for their injuries is to be offset against a jury's award, regardless of the settling defendant's actual culpability. By the same token, a settling defendant exposes all nonsettling defendants to responsibility for the remainder of a damage award that a jury calculates as proper to compensate a plaintiff. This will sometimes result in nonsettling defendants having to pay *more* than they would have paid had the settling defendant remained a party to the suit or amenable to contribution.

{¶ 39} The CATA, when correctly interpreted, allows the victim of a tort to receive a measure of compensation designed to make him or her whole, promotes settlement and judicial economy, and provides a scheme by which joint tortfeasors are to share responsibility for their conduct. Because the scheme favors settlement, some tortfeasors might escape paying damages in direct proportion to their degree of fault. That is, however, a compromise that the legislature intended. The CATA is not designed, nor should it be interpreted, to afford double recovery and encourage lawsuit abuse.

{¶ 40} The majority's gloss on the statutory scheme gives plaintiffs incentive to sue parties whose legal responsibility for the plaintiffs' injuries is doubtful. As noted by the majority, defendants settle for many reasons other than

the likelihood of an adverse verdict, including the avoidance of bad publicity and litigation costs, and the maintenance of favorable commercial relationships. If sums received from these settlements are permitted to augment the amount that a jury determines to be proper compensation for the injury, plaintiffs are encouraged to sue as many entities as possible in hopes that parties who would likely prevail at trial might settle for other reasons.

{¶ 41} Finally, whatever may be said for the reasoning that supports the judicially created collateral source rule, we cannot assume that the General Assembly intended its incorporation by analogy when drafting the CATA. The collateral source rule has at its base an assumption that a defendant wrongdoer should not " 'get the benefit of payments that come to the plaintiff from a "collateral source." ' " *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 108, 52 O.O.2d 395, 397, 263 N.E.2d 235, 238, quoting 2 Harper & James, The Law of Torts (1956), Section 25.22. The majority engrafts this principle onto former R.C. 2307.32(F) by holding that the phrase "liable in tort" requires a demonstration that a settling party, in fact, tortiously contributed to the plaintiff's injuries before setoff is permitted. Unlike collateral source benefits, which traditionally include insurance proceeds, sick benefits and gratuitous contributions, a plaintiff extracts a litigation settlement from the settling party by accusing that party of causing the plaintiff's injuries. Accordingly, it is proper that sums received from such settlements should be offset against a jury award that is designed to make the plaintiff whole for those same injuries.

{¶ 42} *Ziegler* provides the correct rule of law and should control this action. Accordingly, I would affirm the judgment of the court of appeals.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 43} I join in Justice Cook's dissent but write separately to voice a stronger concern. A plaintiff, and a lawyer filing on the plaintiff's behalf, should

sue *only* when they have a good faith belief that the defendant *is* or *may be liable* for damages incurred. While a *defendant* may settle for many different reasons other than actual liability, such as litigation costs, public relations control, or missing evidence or witnesses, a *plaintiff* should settle only if the plaintiff still *has a good faith belief* that the defendant is liable. It is unethical and immoral for a plaintiff to take money from a defendant who the plaintiff no longer believes is liable. The *plaintiff* cannot take a defendant's money to save litigation costs or control bad public relations, or because of missing key evidence or witnesses *unless* the plaintiff and the plaintiff's attorney *also* still have a good faith Civ.R. 11 belief that the defendant is *still liable*. To take money under any other conditions, when the plaintiff and the plaintiff's attorney know or have uncovered evidence to show that the defendant is no longer liable, is a gross abuse of our justice system.

{¶ 44} If the plaintiff settles, the plaintiff is *conceding* by settlement that the plaintiff still considers the defendant liable. That is *all* that should be needed to invoke R.C. 2307.32(F). If the plaintiff did not believe that the defendant continued to be liable, the plaintiff should have returned the settling defendant's money. The plaintiff in this case seeks to have it both ways and obtain a double recovery. R.C. 2307.32(F) was designed to prevent such unjust results. Therefore, I also respectfully dissent.

_____