[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This case is on appeal from the February 22, 1999 judgment of the Erie County Court of Common Pleas, which granted the motion of Vanessa Blakely, appellee, for prejudgment interest from the date of the accident until the date of that order. On appeal, Amy J. Lucal, appellant, who is insured by State Farm Insurance Company, asserts the following two assignments of error:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ORDERING THAT DEFENDANT-APPELLANT PAY PREJUDGMENT INTEREST
 "THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST BECAUSE SUCH INTEREST MAY ONLY BE AWARDED ON PAST DAMAGES AND THERE IS NO WAY TO TELL WHAT PORTION OF THE JUDGMENT REPRESENTS PAST, AS OPPOSED TO FUTURE DAMAGES"
On December 18, 1996, appellee obtained a $60,000 judgment against appellant for injuries she sustained in an automobile accident. The judgment entry was not filed until January 22, 1997. On December 24, 1996, appellee filed a motion for prejudgment interest pursuant to R.C. 1343.03(C) back to the date of the accident, July 12, 1991. The trial court granted the motion without any specific findings.
Appellant first argues that the trial court's pre-judgment interest award is erroneous because the court could not have found that the common law requirements for granting pre-judgment interest had been satisfied.
R.C. 1343.03(C), effective July 5, 1982,[1] provides that a court may, upon motion, award a party prejudgment interest "on a judgment * * * rendered in a civil action based on tortious conduct and not settled by agreement of the parties * * *." The amount of interest "shall be computed from the date the cause of action accrued to the date on which the money is paid, * * *." The statute also provides that the court must determine, following a hearing, that the opposing party "failed to make a good faith effort to settle the case and that the [moving] party * * * did not fail to make a good faith effort to settle the case."
The Ohio Supreme Court defined the phrase "good faith effort to settle," in Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus. The court held that:
 "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has: (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
Thus, the court held that the key is whether there was an "honest effort to settle the case," not whether there was bad faith, malice, design to defraud, etc. Id. at 159.
The determination of whether prejudgment interest should be awarded under the statute is a discretionary decision for the trial court. Therefore, the trial court's decision will not be overturned on appeal absent a showing that the trial court abused its discretion. Zielger v. Wendel Poultry Services, Inc. (1993),67 Ohio St.3d 10, 20, overruled in part on other grounds inFidelholtz v. Peller (1998), 81 Ohio St.3d 197, syllabus. An abuse of discretion standard requires that a party show more than that the court made an error in law or of judgment; he must show that the court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Appellant contends she did reasonably evaluate the claim based upon the information available and that she fully cooperated in the discovery process. Furthermore, she contends that the court should not have granted prejudgment interest in this case because appellee did not cooperate in the discovery process and did not make a good faith effort to settle the case. With respect to appellee's failure to cooperate in the discovery proceedings, appellant contends: 1) that she requested medical records one month after the accident and did not receive any as of the date the suit was filed in July 1993; 2) that after suit was filed in 1993, appellee failed to provide complete medical records, failed to respond to interrogatories, and failed to show for an independent medical exam; and 3) that the independent medical exam did not occur until January 1996.
We note that the record from the first complaint filed in this case and later voluntarily dismissed was not included in the record on appeal. There is nothing in the appellate record to indicate that appellee willfully avoided discovery in this case. While there was some delay in the exchange of information, there is no record of appellant informing the court that appellee was not complying with the discovery rules.
Appellant also contends that appellee delayed the trial of this case by requesting continuances because of scheduling conflicts and by filing, dismissing, and re-filing her complaint just prior to the running of the statute of limitations. Again, appellant has failed to established that any of these actions were unnecessary or improper.
The final issue raised is whether the parties negotiated in good faith. The accident occurred on July 12, 1991. State Farm contacted appellee's attorney on August 15, 1991 requesting medical information. Steve Underwood, a claim representative and supervisor for State Farm Insurance, testified that the initial reserve was set in 1991 by computer at $2,000. State Farms' records indicate that in March 1992, appellee contacted State Farm directly and indicated that she had finished medical treatment and was ready to settle the case.
Patrick McGookey, M.D., a board certified neurologist, testified at his October 29, 1996 deposition that he treated Blakely on June 23, 1992 following a referral by a family physician because of symptoms of pain, numbness, and occasional spasms arising after the 1991 accident. McGookey had previously treated appellee in June 1987 regarding an episode of loss of consciousness and a questionable seizure. Based upon his examination, he did not find any neurological changes although he had found that many back injury patients do not have hard neurological findings. He concluded that she had more a soft-tissue injury. Upon a review of the MRI ordered by another doctor in October 1992, he concluded that her symptoms in June 1992 were consistent with a thoracic disc herniation. He further testified that even if she had been in a subsequent accident or injured herself in some other manner, his opinion of her injury would not change since she complained that the pain originated after the original accident.
Dr. Sanford Emery, a board certified orthopedic surgeon who specializes in the spine, testified that he examined appellee in October 1992 based on a referral from her Sandusky orthopedist, Dr. Wong. Based on an MRI and her statements, he determined to a reasonable degree of medical certainty that the accident had caused a herniated disc that was pushing on the spinal cord. While appellee had not indicated that she had been injured in some other way since the accident, Emery believed that his diagnoses was still correct because she stated that the pain began after the accident and the types of events that appellant proposed as having happened after the accident probably would not have caused this type of injury. While therapy and exercise did seem to alleviate some of her pain, Emery believed that appellee's condition was permanent and could remain constant or worsen over time.
On April 29, 1993, State Farm sent a letter to appellee stating that it was still awaiting medical information from appellee to proceed with settlement negotiations.
In July 1993, appellee's counsel sent a letter to State Farm indicating that he had been unable to attend to this case and would be filing a complaint because the statute of limitations for filing suit was about to run. However, he indicated that he still desired to settle the case. Appellee filed suit on July 12, 1993.
In February 1994, counsel for State Farm evaluated the case and informed State Farm that although appellee's herniated disc was not diagnosed until more than a year after the accident, there were medical records indicating complaints and therapy involving the back from the date of the accident. Unless another cause could be found for appellee's back injury, he estimated a jury verdict of $25,000 to $30,000.
Holly Kromer, a newly-employed claims representative for State Farm Insurance at the time of this accident, testified that she prepared the first formal evaluation of the claim in March 1994 and valued the claim at a range of $1,764.75 to $42,306.19. State Farm authorized a settlement of up to $5,000. In May 1994, the insurance company offered a settlement of $4,000, which appellee rejected. In July 1994, appellee received Emery's medical report identifying appellee's injury and linking it to the 1991 accident. Therefore, in August 1994, appellee demanded a settlement of $45,000, which was rejected.
As time passed, Kromer found that counsel for State Farm did not appear to agree with her evaluation of the case. She discussed the claim in September 1994 with John Smalley, a defense attorney who gave seminars for the company, and he advised her that she should pursue a defense based upon a prior injury or subsequent injury.
Appellee voluntarily dismissed her case September 29, 1994. The record does not indicate a reason for the dismissal. However, in a later memorandum, appellee indicated that she sought a dismissal to avoid a videotaped trial.
In August 1995, appellee demanded a settlement of $100,000 based upon Emery's medical report, but the offer was rejected. State Farm requested additional medical records regarding Emery's examination. Appellee re-filed her complaint on September 20, 1995.
An independent medical examination of appellee was performed by Dr. Brooks in January 1996. Neither his medical opinion nor his subsequent deposition on July 24, 1996, are part of the record of this case. The only evidence in the record describing Brooks' medical opinion is that of the July 17, 1996 deposition of Emery. Emery testified that he did not agree with the conclusions of Brooks that the herniated disc was unrelated to the accident, Emery believed that appellee's immediate symptoms were indicative of a herniated disc, that it was possible that a person could have no symptoms for nearly a year after an accident, and that a person could have a herniated disc with no neurologic changes.
Underwood re-evaluated the claim regularly and raised the settlement authority in June 1996 and again in November 1996 to $15,000 just prior to court-appointed mediation. He did not believe that the case was worth more than that because there were prior accidents, subsequent injuries, gaps in treatment, and a lack of objective findings of injury. While there was an MRI showing a herniated thoracic disc, he did not believe that it was a herniated disc as defined in medical literature. He relied upon Dr. Brooks' diagnosis of a mid thoracic protruding intervertebral disc. He believed that a protruded disc is normal so long as it does not continue to be protruding. While Underwood considered the opinions of appellee's treating physicians, he could not recall their opinions at the time of his deposition.
In its February 1995 correspondence, however, State Farm acknowledged the diagnoses of a herniated disk, but attributed it to a degenerative problem rather than the accident. Kromer testified that she was aware, as of February 1996, of a diagnosis of a "disc protrusion." Because of conversations with Smalley and a review of the medical evidence indicating no immediate objective findings or complaints of numbness, tingling, or nerve distribution patterns, Kromer believed that appellee's injuries were not caused by the accident.
Appellee rejected State Farms' offers to settle for anything less than $25,000 until a few days prior to trial, when she lowered her settlement offer to $20,000. Appellee's trial counsel testified that appellee reduced her offer in order to initiate some movement on the part of State Farm. The final offer made by State Farm shortly before trial was for $16,500 and appellee remained at $20,000.
In light of the medical evidence in the record of this case, we find that the trial court did not abuse its discretion when it found that appellant did not reasonably evaluate this case and make a higher settlement offer sooner. Once appellee's medical condition was finally diagnosed, it was unreasonable for State Farm to rely solely upon Brooks' medical opinion to evaluate the case. Appellant's first assignment of error is not well-taken.
In her second assignment of error, appellant argues that the trial court erred by granting prejudgment interest from the date of the accident when a portion of the damages represented future damages. The 1997 amended version of R.C. 1343.03(C) expressly prohibits the award of prejudgment interest on future damage awards. R.C. 1343.03(C)(3). However, the prior version of the statute in effect at the time of this case did not contain this exception. Appellant argues that we must interpret the former statute as restricting the award of damages on future damages because the purpose of the statute and common law concept of prejudgment interest was to make the injured party whole, not to permit him to profit from the interest or penalize the tortfeasor. Finally, appellant argues that appellee bore the burden of submitting interrogatories to the jury to indicate what portion of the judgment was for future damages. Consequently, he argues, the court could not award prejudgment interest on the judgment.
Appellee responds that this court should not interpret the former statute in order to further policy regarding what the law ought to do. Instead, she urges us to apply the law as it was written. We agree. Appellant did not present this issue to the trial court so that it could address the issue. Since the trial court applied the statutory law as it was written, we cannot find that its decision resulted in an abuse of its discretion. Appellant's second assignment of error is not well-taken.
Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Erie County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________________________ PETER M. HANDWORK, J., JUDGE.
 __________________________________________ RICHARD W. KNEPPER, P.J., JUDGE.
 __________________________________________ MARK L. PIETRYKOWSKI, J., JUDGE CONCUR.
[1] This statute was revised effective January 21, 1997.