OPINION
This is a timely appeal from the Mahoning County Court of Common Pleas' denial of John Schmidt's ("Appellant") motion for a new trial. That motion challenged the validity of a jury verdict in favor of Andrew Wren, D.O. ("Appellee Wren"), and Beeghly Immediate Care ("Appellee Beeghly") in Appellant's medical malpractice and wrongful death action arising from the death of Appellant's wife, Tammy Jo Schmidt ("Mrs. Schmidt").
On April 15, 1996, Mrs. Schmidt died of a pulmonary embolism. She had begun to experience symptoms related to the condition during the previous week. On April 8, 1996, she sought treatment at Appellee Beeghly's immediate care facility. There, she complained that for the four or five days leading up to the visit she had suffered from a rapid heart rate, weakness and shortness of breath. (Tr. pp. 460-465). Appellee Wren, an examining physician at Beeghly, diagnosed and treated decedent for hyperventilation syndrome. (Tr. pp. 512-513). Two days later, when Mrs. Schmidt's symptoms appeared to worsen, she sought treatment from her treating physician, John Koval, M.D. Dr. Koval was on vacation, however, so his partner, Kenneth Kenyhercz, M.D. agreed to see Mrs. Schmidt. (Tr. p. 514). Dr. Kenyhercz diagnosed her condition as hyperthyroidism and prescribed the medication, Inderal. Over the next couple of days her condition continued to worsen to the point where she, "couldn't literally take a step without being out of breath." (Tr. p. 518). On April 14, 1996, Mrs. Schmidt contacted Dr. Koval. Apparently Dr. Koval, who expected to return from vacation the following day, agreed to see Mrs. Schmidt the next morning. In the interim, he recommended that she double-up on her intake of Inderal. (Tr. p. 520). The next morning, before she could make her scheduled appointment with Dr. Koval, Mrs. Schmidt succumbed to an undiagnosed pulmonary embolism. (Tr. pp. 527, 596-598).
Appellant sued Dr. Koval, Dr. Kenyhercz, Appellee Wren and Appellee Beeghly, alleging medical malpractice and wrongful death. (Jan. 14, 1997, Complaint, Case No. 97CV145). Appellant complained that Mrs. Schmidt presented a number of symptoms indicative of a pulmonary embolism and that in failing to recognize them, the defendants breached their duty to provide a reasonable standard of care to their patient, thereby causing her death. In their defense, doctors Koval and Kenyhercz maintained that their treatment of Mrs. Schmidt was consistent with the reasonable standard of care. Appellees contended that they, too, were not negligent in their treatment of Mrs. Schmidt. Appellees argued that if negligence was involved, it occurred when doctors Koval and Kenyhercz took over Mrs. Schmidt's treatment and misdiagnosed her with a thyroid condition. (Tr. p. 82).
Trial commenced on April 4, 2000. On April 7, 2000, Appellant entered into a confidential settlement with doctors Koval and Kenyhercz. (5/15/2000, Judgment Entry of Dismissal). The parties stipulated that the settlement's terms were confidential and that the settling doctors expressly denied any responsibility for or negligence to the Appellant's deceased. (Tr. p. 574). At Appellant's request, the trial court did not offer the jury an explanation for the settling doctors' disappearance from the courtroom in the middle of trial. Instead, the trial court simply informed the jury that these doctors were no longer parties to the case. (Tr. p. 575).
The trial against Appellees, who were now the remaining defendants in the lawsuit, continued. At the close of evidence, Appellees requested and received a directed finding that the settling doctors were "liable in tort." The trial court judge further concluded that the settling doctors had, "acted tortiously and, therefore, caused harm." (4/26/2000, Judgment Entry). The trial court did not share this finding with the jury.
During closing arguments, Appellees argued, among other things, that the evidence established that Mrs. Schmidt's death was caused exclusively by the negligence of the settling doctors. (Tr. pp. 889, 906). On April 13, 2000, the jury issued a verdict in favor of Appellees, explicitly finding that they were not negligent. (4/27/2000, Judgment Entry).
On May 9, 2000 Appellant filed a pleading captioned, "Plaintiff's Motion for Judgment Notwithstanding the Verdict and/or in the Alternative, Motion for New Trial". That motion set forth no grounds for the relief sought. Instead, the motion merely sought time for the court reporter to prepare a transcript of proceedings so that the issues presented below could be more comprehensively briefed.
On May 16, 2000, Appellees filed a motion asking the court to strike Appellant's motion of May 9, 2000. Appellees maintained that the motion violated Civ.R. 7(B) which requires motions to state with particularity the relief sought and the grounds underlying the request.
The trial court did not rule on either motion. Instead, Appellant filed another motion for a new trial on July 19, 2000. That motion did detail the grounds upon which the request was sought. In support of his motion for a new trial Appellant also submitted a complete transcript of the trial. The trial court denied the motion on October 24, 2000.
On November 6, 2000, Appellant filed his notice of appeal from the trial court's denial of his motion for a new trial.
Appellant raises six assignments of error in this Court. Although Appellees sought and received leave to file a cross appeal, they have raised no additional issues. Before addressing the merits of Appellant's respective claims, however, this Court must first address the matter as to whether it has jurisdiction to entertain this appeal notwithstanding the fact that six months elapsed between the filing of Appellant's initial motion for a new trial, Appellee's motion to strike that motion and the submission of Appellant's notice of appeal.
Under App.R. 3, a party seeking review of a trial court judgment entry or order must file his notice of appeal from that decision within thirty days. In the matter before us, the trial court entered judgment on the jury's verdict on April 27, 2000. Appellant's initial motion asking for judgment notwithstanding the verdict or a new trial was filed in a timely fashion on May 9, 2000. Nevertheless, as Appellees noted in their motion to strike of May 16, 2000, the motion failed to set forth particular grounds for relief as required under Civ.R. 7(B). See also Civ.R. 50(A)(3).
The trial court never directly addressed Appellee's motion to strike. In the interim, evidently intending to replace or subsume his first motion, Appellant filed a second motion for a new trial on July 19, 2000. Appellees did not renew their motion to strike or demand a ruling on it from the trial court. Accordingly, this Court can only presume that the trial court implicitly overruled the motion. Solon v. Solon BaptistTemple, Inc. (1982), 8 Ohio App.3d 347. See also, State v. Smith (Dec. 30, 1999), Mahoning App. No. 97 CA 37, unreported, citing State ex rel.The V Companies v. Marshall (1998), 81 Ohio St.3d 467, 469 (if there is a failure to rule on a pretrial motion, it may ordinarily be presumed that the trial court overruled said motion).
After Appellant's July 19, 2000, motion for a new trial was filed and fully briefed, the trial court entered its order of October 24, 2000, from which this appeal is taken. Since the notice of appeal was filed in connection with the trial court's October 24, 2000, Judgment Entry, this Court concludes that it was timely and thus, we have jurisdiction to hear this appeal.
In his first assignment of error, Appellant maintains that,
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FINDING THE DEFENDANTS DR. KOVAL AND DR. KENYHERCZ NEGLIGENT AS A MATTER OF LAW AND ALLOWING COUNSEL TO COMMENT ON THIS FINDING IN CLOSING ARGUMENT AND THEN FAILING TO INSTRUCT THE JURY."
The trial court found that the settling doctors were "liable in tort" for purposes of offsetting any judgment the jury might award Appellant in his case against Appellees. (Tr. pp. 806-807). Appellant contends that the trial court's finding was inappropriate, premature and inconsistent with the holding of Fidelholtz v. Peller (1998), 81 Ohio St.3d 197. Under Appellant's reading of Fidelholtz, for purposes of offsetting any judgment against a non-settling defendant, the liability of any defendants who have previously settled with the plaintiff is properly reached only after the jury reaches a verdict.
According to Appellant, once the trial court judge found that the settling doctors were liable in tort, the remaining counsel were given the impression that the judge would instruct the jury that Koval and Kenyhercz were negligent as a matter of law. (Appellant's Brf. p. 10). Appellant claims that in anticipation of such an instruction, counsel on both sides of the case addressed the negligence of the missing doctors in their closing arguments. Appellant argues that when the judge failed to instruct the jury about the status of the settling doctors or otherwise guide the jury with respect to its treatment of them, this action or lack of action resulted in prejudice to Appellant.
Appellant speculates that the trial court's handling of this matter so confused the jury that it must have concluded that the settling doctors were the only parties responsible for Mrs. Schmidt's death. This Court is compelled to disagree.
This is an appeal from the trial court's denial of Appellant's motion for a new trial filed pursuant to Civ.R. 59. That rule gives the trial court authority to grant a new trial based on, "irregularities in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial."
A trial court has broad discretion in resolving a motion for a new trial. Holcomb v. Holcomb (1989), 44 Ohio St.3d 129, 131. Absent an abuse of that discretion, this Court will not disturb its decision. Bible v.Kerr (1992), 81 Ohio App.3d 225, 227. Abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the court was unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
At the outset, we note that the error cited by Appellant appears to have been, if not invited, certainly waived. Under the "invited error" doctrine, "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." CenterRidge Ganley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, 313; citing,Lester v. Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus. The notion of invited error acknowledges that every litigant has a duty to contemporaneously challenge a perceived error and first bring it to the attention of the trial court. In so doing, the litigant provides the court with an opportunity to correct or otherwise remedy the error. Accordingly, "a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible." State v. Kollar (1915), 93 Ohio St. 89,91.
When Appellant settled mid-trial with two co-defendants, he requested that the court tell the jury only that the settling doctors were no longer parties to the lawsuit. (Tr. p. 575). The trial court thereafter instructed the jury precisely as Appellant requested and the jury heard nothing about the missing doctors until the parties' closing remarks.
Outside the presence of the jury, the trial court entered a finding that the settling doctors were negligent as a matter of law. When Appellees requested the trial court to advise the jury of that finding, Appellant objected, insisting that it would be better for the jury to hear nothing from the court in regard to the missing parties. (Tr. p. 811).
Ultimately, the trial court rejected Appellees' requested instruction regarding the settling doctors and omitted any reference to them during its final charge to the jury. After the jury was sent out to deliberate, Appellees objected to the trial court's failure to instruct the jury about its findings in connection with the missing defendants, while Appellant remained silent. Consequently, it appears to this Court that Appellant is now complaining about the trial court's failure to give an instruction that he did not request and to which he repeatedly objected. Since Appellant, then, appears largely responsible for the error of which he now complains, this Court is loath to accept his invitation to reverse the trial court on this basis.
This Court also notes that Appellant stood by mute while one of the attorneys representing Appellees maintained during their respective closing remarks that the missing doctors were negligent as a matter of law. (Tr. p. 890). Specifically, counsel remarked, "Now, the Judge is going to tell you as a matter of law that Drs. Kenyhercz and Koval were negligent. Surprise. Why do you think they left suddenly right before Dr. Hulesch was going to go on the stand and nail them on negligence." (Tr. pp. 890-891).
Appellant now asserts that he was prejudiced by this argument. Nevertheless, it is well-settled that an appellate court need not consider an error which a complaining party could have brought to the trial court's attention in time for that court to address or correct the error. Chicone v. Mayo Orvets Real Estate (Dec. 1, 1998), Mahoning App. No. 96 CA 28, unreported; citing, State ex rel. Quarto Mining Companyv. Foreman, et al. (1997), 79 Ohio St.3d 78. Accordingly, this Court will not entertain Appellant's complaints concerning alleged errors to which he did not raise contemporaneous objections.
While the parties on all sides of this dispute rely on the Supreme Court's decision Fidelholtz v. Peller (1998), 81 Ohio St.3d 197, this Court believes that such reliance is misplaced. Fidelholtz held that before one defendant was entitled to the set-off contemplated under R.C. § 2307.33(F) from judgment funds received by plaintiff pursuant to a settlement agreement with another defendant, there must be a determination that the co-defendant is "liable in tort," meaning that he acted tortiously and thereby caused harm. That determination may occur through jury finding, judicial adjudication, stipulations of parties, or the release language of the settlement itself.
Former R.C. § 2307.33(F) provides in relevant part:
"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person * * *, the following apply:
"* * * The release or covenant does not discharge any of the other tortfeasors from liability for the injury * * * unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater;
In the wake of Fidelholtz, a defendant seeking to offset a judgment award by the amount a plaintiff received in settlement with a joint tortfeasor cannot do so absent a finding that the settling party had also been liable. Id. at 201-203. The mere fact that the tortfeasor had settled was not enough. Appellant argues that the trial court's finding mid-trial that the settling defendants were "liable in tort," entitling Appellees to a potential judgment award setoff, was premature underFidelholtz.
This Court does not agree that Fidelholtz bars a trial court from determining a defendant's entitlement to setoff until after the jury verdict. See In re Miamisburg Train Derailment (1999), 132 Ohio App.3d 571,585-587. Moreover, such an analysis is unnecessary to resolve the issue at bar. Fidelholtz deals with apportionment of fault. The jury was not informed of the trial court's ruling on this matter. In light of the jury's conclusion that Appellees were not negligent and therefore not at fault, Fidelholtz has no application to this case. Appellant's first assignment of error is, therefore, overruled.
In his second and third assignments of error, Appellant maintains:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY INSTRUCTING THE JURY ON INTERVENING AND SUPERSEDING CAUSE AND INSTRUCTING COUNSEL IT WOULD GIVE A SIMILAR JURY INTERROGATORY AND THEN FAILING TO GIVE SAID INTERROGATORY EVEN THOUGH BOTH PLAINTIFF AND DEFENSE COUNSEL COMMENTED SIGNIFICANTLY ON SUCH INTERROGATORY IN CLOSING ARGUMENT." "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO INSTRUCT THE JURY ON SUCCESSIVE TORTFEASOR DOCTRINE."
Since both assignments of error deal with jury instructions, they will be addressed jointly. Appellant complains that the trial court erred when it instructed the jury on intervening and superceding causes, and that such instructions were improper given the facts of this case. Appellant argues that the proper instruction in this case addresses the issue of successive tortfeasors and that the trial court committed reversible error by failing to so instruct the jury.
Appellant also contends that the trial court abused its discretion when it failed to submit an interrogatory on intervening and superceding cause after instructing on that issue. In the interest of expedience, this issue will be dispensed with first. The record reflects that Appellees had requested that the trial court submit to the jury a special interrogatory on the issue of intervening and superceding cause. Appellees submitted such an interrogatory over Appellant's objection. (Tr. p. 830). When the trial court decided without explanation not to tender that interrogatory to the jury, it was Appellees who objected. (Tr. pp. 987, 989). Appellant did not object. Therefore, any complaint Appellant now has with the trial court's failure to submit an interrogatory on superceding and intervening cause is waived. Chicone,supra at p. 3.
As for Appellant's jury instruction argument, it also lacks merit. The erroneous instruction or failure to instruct a jury amounts to reversible error where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process. Jenks v. City of WestCarrollton (1989), 58 Ohio App.3d 33 at the syllabus. In determining whether a trial court's decision with respect to specific jury instructions was prejudicial, a court of review must examine the totality of the given or proposed jury charge. Clark v. Doe (1997),119 Ohio App.3d 296.
Jury instructions should be confined to the issues raised by the pleadings and the evidence. Becker v. Lake County Memorial Hospital West
(1990), 53 Ohio St.3d 202, 208. An instruction is properly given if it is a correct statement of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction. Murphy v. Carrollton Manufacturing Co. (1991),61 Ohio St.3d 585, 591.
In the instant case, after instructing the jury with respect to negligence and proximate cause, the trial court instructed the jury with regard to the issues of intervening and superceding cause, as follows:
"Where two or more independent, negligent acts combine to produce a single harmful result, and where each of these is a substantial factor in producing that result, the actors are jointly responsible unless the negligence of one or more actors breaks the causal connection of the other actors, and thus relieves him of legal responsibility for the harmful result.
"Causal connection is broken when a subsequent act or failure to act intervenes and completely removes the effect of the first act of negligence and is itself the proximate cause of the injury; in this case, the death of Tammy Jo Schmidt. The causal connection of the first act of negligence is broken and superseded by the second only if the intervening negligent act is both new and independent. The term independent means the absence of any connection or relationship of cause and effect between the original and the subsequent act of negligence. The term new means that the second act of negligence could not reasonably have been foreseen." (Tr. pp. 962-963).
According to Appellant, there was no evidentiary support for such an instruction. Instead, Appellant maintains that the jury should have been instructed regarding the successive tortfeasor rule as follows:
"This rule holds the original tortfeasor liable for the negligence of a subsequent tortfeasor, whose actions are necessitated by the original negligence.
"In this case, if you find that the subsequent treatment rendered by Drs. Kenyhercz and Koval was negligent and that their treatment of Tammy Jo Schmidt was necessitated by the negligence of Defendant, Dr. Wren, then Dr. Wren is responsible for the subsequent negligence of Drs. Kenyhercz and Koval." (Plaintiff's Proposed Jury Instructions).
A review of the record indicates that the jury instructions as submitted to the jury were supported by the evidence elicited at trial. Appellees' expert, Dr. Helwig, testified that had it not been for the negligence of the settling doctors, Mrs. Schmidt would have survived regardless of the quality of the treatment provided by Appellees. (Tr. pp. 758-761). Accordingly, the intervening superceding cause instruction was proper.
Nevertheless, even if the trial court had erroneously instructed the jury with respect to issues related to the apportionment of fault, the error was rendered harmless by the jury's finding that Appellees did not breach the standard of care. Clark v. Doe, 119 Ohio App.3d 296 at 302. Accordingly, the jury could not have reached the question of whether Appellees somehow caused Mrs. Schmidt's death.
Since the harmless error analysis also applies to Appellant's claim with respect to the successive tortfeasor instruction, this Court need not address the validity of Appellant's instruction or its factual applicability to this case. In essence, the jury found that Appellees were not tortfeasors. That finding concluded the jury's inquiry. Appellant's second and third assignments of error are, therefore, overruled.
Appellant's fourth assignment of error states that,
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN NOT ALLOWING PLAINTIFF'S COUNSEL TO CROSS-EXAMINE DEFENDANT, NURSE BACKNER, ON THE ISSUE OF NORMAL PULSE OXIMETRY READINGS."
Appellant argues that the trial court erred when it barred Appellant from eliciting an opinion from Appellee Beeghly's employee, Nurse Backner, concerning whether or not Mrs. Schmidt's pulse oximetry (i.e. blood oxygen content) reading of 92 was normal. Appellant insists that under Evid.R. 601(A), the trial court had discretion to determine the competency of a nurse to testify about medical measurement issues.
According to Appellant, the trial court's ruling deprived him of the opportunity to present evidence critical to his claim that Appellees had been negligent. This Court cannot agree with Appellant's argument.
In a medical malpractice action against a hospital, a nurse is not competent to give expert testimony, pursuant to Evid.R. 601(D), even where the action alleges negligence on the part of the hospital's nursing staff. Harter v. Wadsworth-Rittman (1989), 64 Ohio App.3d 26, 29.
Evid.R. 601(D) restricts the class of persons able to provide opinions with respect to the liability of a physician or a hospital to those licensed by a state to practice medicine or perform surgery. Since Nurse Backner is not in the foregoing category of individuals, the trial court properly denied Appellant from asking her opinion with respect to the results of Mrs. Schmidt's blood oximetry results.
In his fifth assignment of error, Appellant proposes that,
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO INSTRUCT THE JURY THAT THE DEFENDANT, DR. WREN, WAS AN OSTENSIBLE AGENT OF THE DEFENDANT, BEEGHLY IMMEDIATE CARE."
Though couched as a separate issue addressing the trial court's failure to instruct the jury, Appellant actually complains here of cumulative trial error. According to Appellant, the last straw in this case came when the trial court also failed to instruct the jury that Appellee Wren was the ostensible agent of Appellee Beeghly. Appellant contends that the cumulative impact of the errors made by the trial court rendered the trial unfair.
Appellant argues that on three other occasions during this trial, the trial court abused its discretion by not following through on representations it made to counsel. Appellant contends that, although each error alone (including the error alleged in this assignment) may be considered harmless, the cumulative effect causes prejudice and requires this Court to reverse the trial court's denial of his motion for a new trial.
This assignment of error is also meritless. This Court recognizes that there are occasions where the record reveals that cumulative error below is so widespread and damaging to a case that reversal is warranted, even where the individual errors viewed separately are harmless. Dawson v.Cleveland Metropolitan General Hospital (November 20, 1986), Cuyahoga App. No. 51052 51779, unreported. Dawson, as Appellant observes, is one such case. But the alleged error in this case was largely waived, invited or harmless.
There is no such thing as a right to an error-free, perfect trial, and if errors during trial do not prejudice a party's substantial rights, the errors cannot, "become prejudicial by sheer weight of the numbers." Statev. Hill (1996), 75 Ohio St.3d 195, 212. Appellant's fifth assignment of error is overruled.
In his sixth and final assignment of error, Appellant argues,
 "THE TRIAL COURT ERRONEOUSLY OVERRULED PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO OHIO CIVIL RULE 59."
Appellant challenges generally the trial court's denial of his motion for a new trial. The arguments raised in that motion have been addressed individually and overruled in the aforementioned discussion. Thus, this assignment of error is also overruled.
Having overruled Appellant's assignments of error in their entirety, this Court hereby affirms the judgment entered by the Mahoning County Court of Common Pleas.
Vukovich, P.J., concurs.
DeGenaro, J., concurs in judgment only.