[Cite as *Waverly City School Dist. Bd. of Edn. v. Triad AR, Inc.*, 2018-Ohio-4748.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| WAVERLY CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | Case No. 17CA885 |
| | : | |
| v. | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| TRIAD AR, INC., et al., | : | |
| | : | |
| Defendants-Appellees. | : | RELEASED 11/20/2018 |

APPEARANCES:

Michael DeWine, Ohio Attorney General, and William C. Becker, Jerry Kasai, Craig Barclay, and Howard H. Harcha IV, Assistant Ohio Attorneys General, Columbus, Ohio, for plaintiff-appellant Ohio School Facilities Commission.

Mark A. Foley, Columbus, Ohio, for plaintiff-appellant Waverly City School District Board of Education and Special Counsel for Ohio School Facilities Commission.

J. Stephen Teetor, Scyld D. Anderson, and Lee W. Westfall, Isaac Wiles Burkholder & Teetor, LLC, Columbus, Ohio, for defendant-appellee Crace Construction Company.

Donald W. Gregory and Eric B. Travers, Kegler Brown Hill + Ritter Co. LPA, Columbus, Ohio, for defendant-appellee Ohio Farmers Insurance Company as surety for Crace Construction Company.

Bradley J. Barmen, Lewis Brisbois Bisgaard and Smith, Cleveland, Ohio, for defendant-appellee Terracon Consultants, Inc.

Hoover, P.J.

{¶ 1} This appeal arises from the Pike County Court of Common Pleas' decision and journal entry granting summary judgment to defendants-appellees Crace Construction Company ("Crace"), Terracon Consultants, Inc. ("Terracon"), and Ohio Farmers Insurance Company, Inc. ("OFIC") (as surety for Crace) (collectively "appellees"), and to defendants J&H Reinforcing &

Structural Erectors, Inc. ("J&H") and OFIC (as surety for J&H), in a dispute over a school construction project in Waverly, Ohio. The trial court determined that plaintiffs-appellants Waverly City School District Board of Education ("Waverly") and the Ohio School Facilities Commission ("OSFC")[1] (collectively "appellants"), had already been made whole via prior settlements with co-defendants Staggs Roofing Inc. ("Staggs"), Tremco, Inc. ("Tremco"), OFIC (as surety for Staggs), BBL Ohio, LLC/DAG Construction Co. ("BBL"), and Triad AR Inc. ("Triad"), and therefore were not entitled to recover further damages from any of the appellees under their remaining breach of contract claims. In addition, the trial court reasoned that because appellants could not set forth evidence apportioning fault/damages among the various co-defendants, appellants could not recover further damages from the remaining non-settling appellees. On appeal, Waverly and OSFC seek reversal of the trial court's decision and journal entry.

{¶ 2} For the reasons discussed below, we disagree with the trial court that the appellants' settlements with the settling co-defendants extinguish their remaining breach of contract claims against the non-settling appellees. Furthermore, we disagree with the trial court's determination that because appellants' experts could not apportion fault/damages among the various co-defendants their claims for breach of contract could no longer survive. Therefore, we conclude that the trial court did not properly grant summary judgment in favor of the appellees on appellants' breach of contract claims. Accordingly, the judgment of the trial court is reversed; and this matter is remanded to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural Posture

---

[1] Following commencement of this lawsuit, H.B. 49, Section 515.10, effectively changed the name of plaintiff-appellant Ohio School Facilities Commission to the Ohio Facilities Construction Commission. Nevertheless, to maintain consistency with the language employed by the trial court, we use the commission's former name throughout this opinion.

**A. The Project**

{¶ 3} The Waverly school construction project (hereinafter the "Project"), spanning a time period between 2002-2004, involved the building of a campus of four separate schools[2] at an original cost of nearly $50 Million. Waverly and OSFC jointly funded the Project. Rather than having a general contractor performing all construction, the Project called for multiple prime contractors, each with specific scopes of work. There were separate contracts with four prime contractors: Crace, masonry/concrete walks; Staggs, roofing; J&H, general trades/floor slab; and George J. Igel and Company, Inc. ("Igel"), site preparation. There were separate contracts with an architect, Triad, for design and oversight/quality control, and a construction manager, BBL, for oversight/quality control. There was also a contract with geo-technical firm, Terracon (fka H.C. Nutting Company), to provide evaluation of the construction site and soil testing during construction.

**B. Construction Defects and Remediation**

{¶ 4} Waverly took occupancy of the Project at the beginning of the 2004-2005 school year, and immediately experienced major water intrusion problems at all four buildings. In addition, another problem developed with the concrete floor slab in ES-2 heaving in the gymnasium and adjacent classrooms. After several years of failed attempts to fix the problems, the appellants hired CTL Engineering ("CTL") and Schooley Caldwell & Associates ("SCA") to investigate the causes of the water intrusion problems, as well as the heaving floor slab in ES-2. CTL and SCA issued reports, and were able to classify the Project's construction defects into three separate categories, namely: (1) roofing; (2) masonry; and (3) general trades/floor slab. CTL also identified design defects attributable to Triad. The appellants hired Robertson

---

[2] The schools were: (1) Elementary School 1 ("ES-1"); (2) Elementary School 2 ("ES-2"); (3) Junior High School; and (4) High School.

Construction Services ("RCS") to remediate the defective work. Remediation was performed from 2013-2015 at a total cost of $6,592,887.84.[3] This amount included the total of sums billed by RCS for the design and repairs of the roof, masonry, concrete, soils, and all other work at all four buildings of the Waverly campus. This sum also included an admitted betterment of $863,306.

### C. The Original Complaint

{¶ 5} The appellants filed their original complaint in August 2013 and asserted claims against Crace, Staggs, J&H, Igel, and OFIC as surety for the contractors, for their defective work; against Triad, for its design and oversight failures; and against BBL for its oversight failures. The claims included breach of contract and breach of warranties claims against the prime contractors; indemnification under the surety bonds against OFIC; and negligence and breach of contract claims against BBL and Triad.

### D. The Amended Complaints

{¶ 6} After initial discovery Igel was voluntarily dismissed from the lawsuit. Thereafter, the appellants filed an amended complaint on December 11, 2014, adding Terracon as a defendant and asserting claims of negligence and breach of contract for the floor slab heaving issue and its failure to properly test the soil and advise with respect to the heaving floor slabs in ES-2.

{¶ 7} Roofing installer Staggs filed a third-party complaint against roofing materials supplier and inspector, Tremco. Tremco counterclaimed against Staggs, asserting a right to indemnify for any liability based upon faulty installation. Thereafter, the appellants filed a second amended complaint on March 26, 2015, adding Tremco as a defendant, and asserting

---

[3] The cost of remediation was paid by Waverly and the OSFC, with Waverly's share of the costs being $1,354,629 and the OSFC paying the remaining balance.

claims against Tremco based upon allegations of breach of warranties, breach of contract, negligent misrepresentation, tortious interference with contract, and fraud. The appellants asked for compensatory, consequential, and punitive damages, and alleged, inter alia, that Tremco had knowingly, deliberately, and deceptively supplied "blems and/or seconds" to be used at the Project, instead of the first quality product specified in the contract.

{¶ 8} The appellants filed a third amended complaint on September 1, 2016, to state their allegations of fraud against Tremco with greater particularity.

### E. Settlements with Triad and OFIC (as surety for Staggs)

{¶ 9} As discovery progressed, the appellants reached a settlement with the architect Triad for $586,537.35, dismissing it from the case in December 2015. It also reached settlement with OFIC (as surety for Staggs), for $1.5 Million, in March 2016. The Waverly Treasurer and CFO, Claudia Zaler, testified at her deposition that out of these original settlements (with Triad and OFIC for Staggs) Waverly was fully reimbursed for its share of the construction remediation costs and expenses.

### F. The Initial Motions For Summary Judgment

{¶ 10} After the initial settlements, the contractor defendants Staggs, J&H, Crace, Terracon, and OFIC as bond surety, moved for summary judgment on various grounds. The grounds included that: (1) the claims for breach of warranty were time barred; (2) Waverly was not in privity of contract with the contractor defendants; (3) Waverly had been made whole; and (4) the appellants were unable to state with reasonable certainty the amount of damages caused by each of the co-defendants' alleged breaches, but instead would have required the trier of fact to speculate concerning which co-defendant was responsible for how much. J&H, Crace, and Terracon also argued that there was no evidence that their alleged deviations from the design

specifications and/or best trade practices resulted in any damage.

**G. Settlements with Tremco, BBL, and Staggs; Joint Supplemental Brief for Summary**

**Judgment; Trial Court's Ruling on Summary Judgment**

{¶ 11} On May 4, 2017, at the Final Pretrial Conference/Settlement Conference, the appellants disclosed that they had recently settled claims with (1) Tremco, for what was eventually discovered to be a cash settlement of $3,775,000 plus a commitment from Tremco to install a new roofing system worth approximately $3.5 Million, and to pay an additional $190,000 for new roof plans, plus an additional amount up to $150,000 to reimburse the appellants for construction oversight fees; and (2) construction manager BBL for $750,000. While at the Final Pretrial Conference/Settlement Conference, the appellants settled with Staggs for another $75,000. Thus, the only claims that remained by summer 2017 were against non-settling defendants Crace/OFIC for the defective masonry work, and the claims relating to the heaving floor slab against J&H, OFIC, and Terracon.

{¶ 12} In light of the non-settling defendants' concerns that the settlements exceeded the total amount of damages, the trial court granted the non-settling defendants leave to file supplemental briefs for summary judgment. After joint briefing by the defendants, and a response in opposition submitted by appellants, the trial court granted the non-settling defendants summary judgment on the basis that: (1) the amounts received from the settling co-defendants exceeded the damages incurred on the Project; and thus the appellants were made whole, and (2) the appellants could not identify with reasonable certainty which alleged breaches caused what amount of damages, thereby requiring the trier of fact to speculate. It is from that decision that appellants have filed this appeal.

**H. The Damages Matrix**

{¶ 13} Before we address appellants' assignments of error, a brief discussion regarding damages and remediation costs is necessary. As discussed, the costs to remedy the roof, masonry, and floor slab defects was $6,592,887.84. This figure includes an admitted betterment of $863,306. The appellants, through their experts, prepared a "Damages Matrix", which was part of the summary judgment materials below. The Damages Matrix was arranged in four sections, one for each of the schools. The Damages Matrix lists all defects that contributed to the water intrusion and floor slab issues, remediation done to correct the defects, and the costs of the remediation. Where the remedy resulted in betterment, a notation is included in the Damages Matrix. In essence the Damages Matrix detailed all the costs of the remediation and served as the combined summary report of the expert witnesses identified by appellants.

{¶ 14} The Damages Matrix also lists the parties responsible for each defect. Almost every defect identified in the Damages Matrix lists at least two defendants as the responsible party. The experts who created the Damages Matrix testified at their depositions that it was impossible to allocate responsibility for the damages between the defendants listed in the Damages Matrix for each specific defect and remediation cost. For instance, Paul Schmitt of SCA, who co-wrote the Damages Matrix, testified as follows:

Q Have you seen any version of the matrix where there was a division of responsibility?

A No.

Q Have you been asked to provide a division of responsibility?

A No.

Q Is it possible to provide a division of responsibility?

A No.

\* \* \*

Q [Y]our testimony before was you believe you cannot allocate responsibility among any of the parties listed on the matrix, right?

MR. BECKER: Objection, mischaracterizes his testimony.

Q Go ahead.

A Correct.

Q So you cannot allocate responsibility?

A Read the question.

Q I'll ask it again. I referred to it being impossible to allocate responsibility because that's what I understood your earlier testimony to be.

A Uh-huh.

Q Am I correct in that?

A Yes.

\* \* \*

Q But the theory is not, as far as you know, that the school district is gonna get paid twice for everything, right?

A Right.

Q And you have no intention of testifying at trial in regard to how to allocate responsibility? I know you had said you can't do it now. I just want to make sure you don't anticipate being able to do it in 14 months when we go to trial.

A I do not.

{¶ 15} When questioned specifically about an item in the Damages Matrix that had listed four defendants as the responsible party, Schmitt clarified as follows:

Q And if I understand, your testimony from yesterday is that with regards to this [money being claimed from multiple parties] or any other figure here, you're not believing that the Plaintiffs in this case should recover that [100% of each listed damage amount] from Crace, BBL, J&H, and Triad; it's a combination, correct?

A Correct.

Q And you can't sit there and say what percentage of that [damages] is related to or should be assigned to J&H?

A Correct.

Q And is that because you haven't been asked to do that, or is that because you're unable to do that?

A I'm unable to do that.

Q Is any one with SCA able to do that?

A No.

{¶ 16} The other damages expert and Damages Matrix co-author, David Fransen of CTL, testified similarly. Fransen made no attempts to assign percentages of responsibility between the listed defendants. Also, he could not rank the identified defendants from "most culpable to least culpable."

**I. Post-Summary Judgment Settlement With J&H and OFIC (as surety for J&H)**

{¶ 17} J&H and OFIC (as surety for J&H) were initially parties to this appeal. However, during the pendency of this appeal, J&H and OFIC (as surety for J&H) reached settlement with the appellants. Subsequently, the appellants and J&H and OFIC (as surety for J&H) filed a joint motion in this Court seeking dismissal of the appeal only as to J&H and OFIC (as surety for J&H). We granted the motion and dismissed this appeal only as to J&H and OFIC (as surety for J&H) and noted that the appeal remained pending against all other parties. *See* Entry filed July 30, 2018.

**II. Assignments of Error**

{¶ 18} Appellants assert the following assignments of error for review:

Assignment of Error No. 1:

> The Trial Court Erred in Relying On Evidence Not Part of the Record.

Assignment of Error No. 2:

> The Trial Court erred in granting summary judgment to Non-settling Defendant Crace, and its surety OFIC, on the basis that Plaintiff-Appellants were made whole and recovered settlements in excess of their damages.

Assignment of Error No. 3:

> The Trial Court erred in granting summary judgment to Non-settling Defendant Terracon and J&H, and J&H's surety OFIC, on the basis that Plaintiff-Appellants' were made whole and recovered settlements in excess of their damages.

Assignment of Error No. 4:

> The Trial Court Erred in Granting Summary Judgment to Non-settling Defendants in Requiring Plaintiffs to Allocate Damages Among Concurrent Breaching Defendants.

Assignment of Error No. 5:

> The Court erred in Granting Summary Judgment to Non-Settling Defendants by Shifting the Burden of Proof to Plaintiffs to Demonstrate Allocation of Settlement Amounts and Whether Plaintiffs Had Been Fully Compensated.

Assignment of Error No. 6:

> The Court Erred in Finding that the Jury would be required to speculate because it Claimed Plaintiff-Appellants Failed to Present Evidence of the Amount of Damages Attributable to Crace's Breach of Contract for Masonry Construction.

Assignment of Error No. 7:

> The Trial Court Erred in Finding that the Jury would be required to speculate because it Claimed Plaintiff-Appellants Failed to Present Evidence of the Amount of Damages Attributable to J&H's and Terracon's Breaches Regarding the Floor Slab Construction.

Assignment of Error No. 8:

> The Trial Court Erred in Permitting Defendant-Appellees Crace, J&H, and OFIC to Claim Set Off When Those Parties Had Waived That Defense.

## III. Law and Analysis

### A. Standard of Review

{¶ 19} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 20} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary

judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E).

**B. The Trial Court Did Not Err in Relying On Improper Summary Judgment Evidence**

{¶ 21} In their first assignment of error, appellants contend that the trial court erred by relying upon improper summary judgment evidence in violation of Civ.R. 56(C). Specifically, appellants argue that the settlement amounts and agreements as to their settlements with BBL, Staggs, and Tremco were not properly before the trial court; yet, the trial court relied upon the settlement amounts when making its summary judgment determination.

{¶ 22} In their joint supplemental brief for summary judgment, the appellees set out a table listing the settlement amounts received by appellants from the settling co-defendants, including the amounts received from BBL, Staggs, and Tremco. Those settlement amounts

played a crucial role in the trial court's summary judgment decision. However, the BBL and Staggs settlement agreements and settlement amounts were never entered into the record via proper Civ.R. 56(C) evidence. Further, appellees attached the Tremco settlement agreement to the joint supplemental brief for summary judgment, but the document was never authenticated by a properly framed affidavit pursuant to Civ.R. 56(E). Thus, appellants argue that the trial court based its decision on evidence that was not properly entered into the record as required by Civ.R. 56.

{¶ 23} Even if we were to assume that the BBL and Staggs settlement amounts were not presented through proper Civ.R. 56(C) evidence, and the Tremco settlement agreement were not incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E), we note that appellants failed to object to the appropriateness of the evidence in the trial court proceedings. In fact, not only did the appellants fail to object to the consideration of the settlement amounts; they actually noted the BBL and Tremco settlement amounts in their memorandum contra to the joint supplemental brief for summary judgment. "Failure to object to the court's consideration of the evidence submitted in support of a motion for summary judgment constitutes waiver of any alleged error in the consideration of the evidence. A trial court may consider evidence other than the evidence specified in Civ.R. 56(C) where no objection has been raised." (Internal citations omitted.) *Cowen v. Lucas,* 4th Dist. Scioto No. 96CA2456, 1997 WL 362013, *3 (June 30, 1997); *see also Rice v. Lewis,* 4th Dist. Scioto No. 13CA3551, 2013-Ohio-5890, ¶ 23 (holding that appellant's failure to object to improper summary judgment evidence waived any error that the trial court may have committed by considering the evidence). *Accord Carr v. State*, 4th Dist. Vinton No. 14CA697, 2015-Ohio-3895, ¶ 31.

{¶ 24} Furthermore, the appellants do not claim plain error on appeal, so we need not address it. *See Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, ¶ 35 (by not addressing the fact that she did not raise the issue in the trial court, appellant failed to present exceptional circumstances to justify finding of plain error). Even so, they cannot establish plain error because they noted the BBL and Tremco settlement amounts in their memorandum contra to the joint supplemental brief for summary judgment, thereby inviting and encouraging the trial court to consider the settlements. *Id*. at ¶ 22, citing *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 10 (even plain error is waived where error is invited[4]).

{¶ 25} Because the appellants waived their claim contesting the settlement evidence by failing to object to consideration of the evidence during the trial proceedings, and invited the error by affirmatively acknowledging the settlements in their memorandum contra, we overrule their first assignment of error.

## C. The Appellants Can Recover Damages Beyond the Amount Received in Settlement from the Settling Co-Defendants

{¶ 26} In their second and third assignments of error, the appellants contend that the trial court erred in granting summary judgment to the non-settling appellees on their breach of contract claims on the basis that the appellants were made whole and recovered settlements in excess of their remediation costs from the settling co-defendants. For the following reasons, we agree with appellants.

---

[4] " 'Under [the invited-error] doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the court to make.' " *Martin v. Jones*, 2015–Ohio–3168, 41 N.E.3d 123, ¶ 71 (4th Dist.), quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002–Ohio–4849, 775 N.E.2d 517, ¶ 27. The appellants could have raised their objection to the court's consideration of the settlement evidence, but instead affirmatively noted the BBL and Tremco settlement amounts in their memorandum contra to the joint supplemental brief for summary judgment, thereby encouraging the court to review them.

{¶ 27} This appeal concerns appellants' breach of contract claims against the non-settling appellees. " 'In order to succeed on a breach of contract claim, a party must prove [1] the existence of a contract, [2] the party's performance under the contract, [3] the opposing party's breach, and [4] resulting damage.' " *Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 36 (4th Dist.), quoting *DePompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20. Here, the first three elements are not at issue. Rather, what is contested is whether appellants can recover additional damages since the complete costs to remediate the Project was completely satisfied by virtue of their settlements with the settling co-defendants.

{¶ 28} In its summary judgment decision, the trial court found validity in the non-settling defendants' argument that the "Plaintiffs are entitled to only one recovery." The trial court further found:

> [T]hat the total value of the settlements already made by the Plaintiffs exceed the
>
> total amount of the damages claimed to have been incurred by the Plaintiffs, and
>
> the Plaintiffs have therefore been made whole.

{¶ 29} In this case, however, there is not one defect. Rather, there exists a multitude of defects, stemming from the faulty masonry, roof, and floor slab installation; poor design, oversight, and quality control measures; and even from the known use of defective materials. Each defendant in this case was separately contracted to perform a specific task, or to oversee a specific task, and appellants' claims are based on the alleged breaches of the separate and distinct contracts. Thus, the appellants are entitled to recover damages on each contract, apart from any recovery on other separate and distinct contracts. Put another way, the settlements received by the appellants for claims related to the roof defects, and the claims against the architect and construction manager for oversight failures, are based on separate and distinct breach of contract

claims against those parties, and do not preclude appellants from recovering further damages for their breach of contract claims relating to the defective masonry work (Crace/OFIC as surety for Crace) and floor slab installation/site evaluation (Terracon).

{¶ 30} The appellees maintain that the compensation received in settlement fully covered the cost to remediate the entire Project – including the costs to repair the *roof, masonry, and floor slab* defects. Thus, they argue, appellants have been made whole and any additional reward of damages to appellants would result in a windfall – an outcome rebuffed by established precedent. *See MCI Worldcom Network Servs. v. W.M. Brode Co.*, 413 F.Supp.2d 868, 871 (N.D.Ohio 2005) (Quotations omitted.) ("[A] plaintiff should be made whole for his injuries but should not receive a windfall.") This argument is flawed, however, because the settlement proceeds received by the appellants thus far relates to each individual cause of action against the settling party, and has no relevance to the damages owed under the separate and distinct Crace and Terracon contracts. Put simply, it is error to lump the settlement proceeds together, where as is the case here, each defendant held a separate contract with a separate scope of work. Thus, any additional recovery of damages from the appellees would not amount to a windfall, because appellants have yet to recover any damages based on a breach of the Crace contract or Terracon contract. Furthermore, the trial court and appellees seem to obscure the issue of damages by interchanging the terms "damages" and "remediation costs". The remediation costs include only the remedial costs paid to RCS, and does not include other damages incurred by appellants. Specifically, in addition to compensatory damages, appellants also sought consequential damages and punitive damages on their tort claims asserted against Tremco. And, the appellants did assert a negligence claim against Terracon, in addition to their breach of contract claim. Thus, the notion that appellants have fully recovered their requested damages is misleading.

Finally, we note that numerous reasons exist why a defendant would be willing to settle a case for more than the costs to remediate – thus explaining the amount of settlement proceeds received thus far. *See Lumberman's Mut. Cas. Co v. McKinley*, 8th Dist. Cuyahoga No. 53934, 1988 WL 87563, *5 (Aug. 4, 1988) (noting that settlement is oftentimes a preferred course of action among defendants because it avoids litigation and its attendant expenses and relieves the defendant of the risk of constantly being hailed into court); *Fidelholtz v. Peller*, 81 Ohio St.3d 197, 201, 690 N.E.2d 502 (1998) ("Defendants settle for many reasons, such as the avoidance of bad publicity and litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships.").

{¶ 31} For the reasons discussed, we conclude that as a matter of law, the appellants can recover additional damages on their breach of contract claims against appellees. Thus, the trial court erred in granting summary judgment to the appellees on the basis that the appellants had been made whole via the amounts received from the settling co-defendants. Appellants' second and third assignments of error are sustained.

### D. Appellants Are Not Required to Allocate Damages Among Co-Defendants

{¶ 32} Because appellants' fourth through seventh assignments of error are interrelated, we will address them jointly. In those assignments of error, appellants contend that the trial court erred in concluding that because the appellants' damages experts could not allocate damages among the various co-defendants, there was no reasonable certainty of damages; and thus, appellees were entitled to summary judgment.

{¶ 33} In its summary judgment decision, the trial court stated:

Because the Plaintiffs have not segregated and assigned percentages of fault or the amount of damages that is to be allocated among the prime contractors (those who

have settled and those who have not) along with the percentages and/or amounts to be segregated and assigned for the construction manager and architect – and the Plaintiffs' liability and damages experts have indicated that such segregation and assignment cannot be made - the jury/trier of fact would be called upon at trial to engage in improper speculation concerning whether there still exist damages for which the Plaintiffs have not been paid and concerning which, if any, of the non-settling Defendants should be found responsible for such damages, if any, and in what amounts.

{¶ 34} In short, the trial court determined that because appellants could not segregate and assign percentages of fault and damages as between the prime contractors and the oversight parties, they were not entitled to recover additional damages from the non-settling defendants. Under Ohio law however, "in a breach-of-contract action, a defendant must pay damages equivalent to the total harm suffered, even if factors other than the breach contributed to causing that harm." *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, 104 N.E.3d 1076, ¶ 40 (10th Dist.), citing *Corbin on Contracts*. " '[W]hen the plaintiff's total injury may have been the result of many factors, in addition to the defendant's breach of the contract, the plaintiff, in order to establish injury, must show that the defendant's breach was a substantial factor in causing the injury.' " *Id.*, quoting *Cammerer Farms v. Terra Internatl., Inc.*, 12th Dist. Warren No. CA91-02-020, 1991 WL 274322, *3 (Dec. 23, 1991). Thus, in contract cases, if the defendant's breach or fault was a "substantial factor" in causing the injury, the defendant may be held responsible for the full extent of the damages, even if there were other, contributing causes. *Id.*, and cases cited therein. "A breach of contract is a substantial factor in causing a plaintiff's damages if it is

the predominating, primary, real, main, or chief causal factor." *Id*., citing *Columbia First Bank, FSB v. U.S.*, 60 Fed.Cl. 97, 104 (2004).

{¶ 35} The treatise *Corbin on Contracts* states this proposition of law as follows:

In all cases involving problems of causation and responsibility for harm, a good

many factors have united in producing the result. * * * The plaintiff's total injury

may have been the result of many factors in addition to the defendant's tort or

breach of contract. In such a case must the defendant pay damages equivalent to

the total harm suffered? Generally the answer is, Yes, even though there were

contributing factors other than the defendant's own conduct. * * * Must the

plaintiff show the proportionate part played by the defendant's breach of contract

among all the contributing factors causing the injury, and must the loss be

segregated proportionately? To these questions the answer is generally, No. In

order to establish liability the plaintiff must show that the defendant's breach was

"a substantial factor" in causing the injury. * * *

11 *Corbin on Contracts*, Section 55.9.

{¶ 36} Here, the appellants presented sufficient evidence to conclude, especially when viewed in a light favorable to them as required, that at the very least a genuine issue of fact remains as to whether the appellees' breach of their respective contracts was a substantial factor contributing to the defects listed in the Damages Matrix. And because when a defendant's breach is a "substantial factor" in causing the injury the defendant may be held responsible for the full extent of the damages, the issue of proportionate fault among other contributing factors is not germane to the appellants' recovery from appellees.

{¶ 37} We further find the trial court's conclusion that the trier of fact would have to engage in improper speculation concerning damages to be misplaced. This conclusion is a variant of the allocation argument. The proposition of law in *Claris*, noted above, clearly states that in contract cases, if the defendant's breach was a "substantial factor" in causing the injury, the defendant may be held responsible *for the full extent of the damages*, even if there were other, contributing causes. Thus, if the trier of fact were to conclude that the appellees breached their respective contracts, and such breach was a substantial factor in causing the deficiencies outlined in the Damages Matrix, then the appellees could be held responsible for the entire amount of damages. In other words, the trier of fact need not "speculate" on any allocation between multiple parties who may have contributed to the same damage.

{¶ 38} Based on the foregoing, we conclude that trial court erred in granting summary judgment to the appellees on the basis that the appellants were required to apportion fault or damages among the various defendants, and on the basis that the trier of fact would be required to speculate as to the amount of damages owed for the respective breach of contract actions. Appellants' assignments of error four through seven are sustained.

## E. The Affirmative Defense of "Setoff" Was Never Advanced By Crace and the Appellants' Argument is Misplaced

{¶ 39} In their eighth assignment of error, the appellants contend that the trial court erred in permitting appellee Crace to claim setoff when Crace did not plead setoff as an affirmative defense. Put another way, appellants argue that because Crace, and OFIC (as surety for Crace), did not raise the defense of setoff in their answers, they thereby waived the defense and any argument that the settlement monies received by appellants from the settling co-defendants should be "setoff" against their liability.

{¶ 40} While the parties and the case law occasionally refers to deducting or crediting settlement amounts from damages claimed against non-settling defendants as a "setoff", this is not a "setoff" as traditionally construed in the context of an affirmative defense. In the traditional sense, "[a] setoff 'is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction.' " *Lewis v. United Joint Venture*, 691 F.3d 835, 839 (6th Cir.2012), quoting *Witham v. S. Side Bldg. & Loan Assn. of Lima, Ohio*, 133 Ohio St. 560, 562, 15 N.E.2d 149 (1938). Here, Crace and its surety OFIC have never claimed that appellants owe a debt to them and that such debt should be setoff by way of mutual deduction. Rather, what Crace and the other non-settling defendants argue in this case is that because appellants have recovered settlement proceeds from the settling co-defendants that exceed the entire cost to remediate the Project, appellants' are no longer entitled to recover damages, and thus cannot establish an essential element of their breach of contract claims. *See* discussion of Appellants' second and third assignments of error *supra*. Thus, the appellants' argument that Crace and OFIC (as surety for Crace) should have pleaded the affirmative defense of setoff, is misplaced. Accordingly, we overrule appellants' eighth assignment of error.

### IV. Conclusion

{¶ 41} In sum, we overrule appellants' first and eighth assignments of error, but sustain the remaining assignments of error and find that the trial court erred in granting appellees summary judgment. Accordingly, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND THIS CAUSE IS REMANDED to the trial court for further proceedings consistent with this opinion. Appellees shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

By:_____
       Marie Hoover, Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**